**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Russell B. ALLEN, Defendant–Appellant.**

No. 95–5251.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1996.

Decided Feb. 10, 1997.

Terry M. Cushing, Asst. U.S. Attorney (argued), Philip C. Chance, Asst. U.S. Attorney (briefed), Office of the U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Paul J. Neel, Jr. (argued and briefed), Louisville, KY, Russell B. Allen (briefed), Manchester, KY, for Defendant–Appellant.

Before: MERRITT and MILBURN, Circuit Judges; O'MALLEY, District Judge.*

* The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

O'MALLEY, District Judge.

Defendant–Appellant Russell B. Allen was charged in a three-count indictment with: (1) possession with intent to distribute marijuana; (2) possession with intent to distribute cocaine; and (3) contemporaneous use of a firearm. Allen filed a motion to suppress evidence, which the district court denied. Thereafter, a jury found Allen guilty on all three counts, and the trial court sentenced Allen to one hundred months in a federal penitentiary. Allen now appeals his convictions and also the length of his sentence. For the reasons set forth below, we AFFIRM in all respects.

## I.

The district court made the following findings of fact, none of which have been shown to be clearly erroneous. At about 9:30 p.m. on September 13, 1993, Allen checked into the Days Inn Motel in Shepherdsville, Kentucky. Allen chose to pay cash for his room. Motel policy required all cash customers to pay in advance. Accordingly, Allen tendered $38.12 for one night's lodging, plus a $20.00 deposit for any telephone charges he might incur.

The next morning, Allen tendered $37.12 for another night's lodging, but did not make any additional deposit for telephone charges. At 3:00 p.m. that day, a motel clerk noticed that Allen had incurred telephone charges that reduced his total credit balance to $18.12, an amount insufficient to pay for a night of lodging. Accordingly, the clerk called Allen and informed him he had to increase his credit balance. Allen replied he would do so shortly. An hour later, however, Allen had not appeared. The clerk telephoned Allen again, but got no answer, so the clerk informed the motel manager.

The motel manager went to Allen's motel room and knocked on the door, but there was no answer. Suspecting that Allen had skipped without paying, the manager used her pass key to enter the room. The room appeared empty, but the bathroom light was on, so the manager walked into the bathroom to see if Allen was there. The manager then observed large quantities of loose marijuana laying on a screen placed over the bathtub, as well as stacks of marijuana packaged in brick form on the floor. As she left the room she also noticed more marijuana "bricks" laying in open dresser drawers. The manager immediately left the motel room and locked the door. In addition to the normal room lock, the manager also used a separate key to engage the "lock-out," a deadbolt lock only she could open. Thereafter, the manager called the police.

Several Shepherdsville police officers soon arrived at the motel. The motel manager ushered Officers Rogers and Haycraft to Allen's motel room and unlocked both locks, allowing the officers to enter while she remained outside. After viewing the room for about fifteen seconds, the officers exited. During their time in the motel room, the officers observed the marijuana and also what appeared to be the butt of a pistol in a drawer. The officers did not handle anything in the room. After leaving, the officers directed the manager to re-lock the door and also to re-engage the "lock-out."

The motel manager offered the use of the adjoining room as a "stakeout" to watch for Allen's possible return. The officers agreed. At about 6:30 p.m., Allen returned to the motel. Just before reaching the door to his room, Allen apparently sensed something was amiss, stepped back near a parked truck, knelt down, and opened his brief case. As Allen started to remove a pistol from his brief case, Officer Rogers emerged from the room next door and apprehended Allen.

The police soon secured a warrant to search Allen's brief case, motel room, and automobile. The police recovered from the motel room, among other things, sixteen foil-wrapped "brick" packages of marijuana, some loose marijuana, some cocaine, and a .357 magnum revolver and ammunition. The briefcase contained, in addition to the marijuana and pistol, some plastic baggies containing cocaine residue and hand-held scales with cocaine residue. In Allen's automobile were found two sets of large scales and some marijuana residue.

Officers Rigdon and Rogers gathered this evidence and placed it in the back seat of a police cruiser. The officers then drove the

cruiser from the motel to the city hall evidence room, where they unloaded the cruiser. The marijuana bricks stayed in the evidence room overnight; the next morning, Rigdon and Rogers again loaded the marijuana bricks into a cruiser and transported the drugs to the crime laboratory for analysis. Two persons had keys to the city hall evidence room at the time the marijuana was kept there. Up to six persons had access to the crime lab evidence locker.

Allen was ultimately charged with: (1) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). At trial, Allen moved to suppress the illegal drug evidence based on the officers' warrantless search, and also moved to exclude the illegal drugs based on the government's failure to show chain of custody. The district court declined to suppress or exclude the drug evidence. A jury then found Allen guilty of all three counts.

Allen's motel room was less than one thousand feet from an elementary school. Thus, according to United States Sentencing Guideline § 2D1.2(a)(1), Allen's base offense level was subject to an enhancement of two points. Applying this Guideline, the district court sentenced Allen to forty months imprisonment for counts one and two, to be served concurrently, and sixty months imprisonment for count three, to be served consecutively to the forty months, for a total term of imprisonment of one hundred months. The district judge also imposed a six year term of supervised release. This timely appeal followed.

## II.

Allen raises four issues on appeal. First, Allen argues his motel room was subjected to an unconstitutional search, so the evidence seized from his room should have been suppressed. Second, Allen argues the government did not prove a chain of custody of the illegal drug evidence, so the evidence should not have been admitted. Third, Allen argues his sentence was improperly enhanced because the sentencing statute had no Commerce Clause nexus to the United States Constitution. Finally, Allen argues he was denied his right to a fair trial as a result of the district court's cumulative error. We disagree with Allen on all four issues.

### A. Search and Seizure.

■ The Fourth Amendment generally requires police officers to obtain a warrant before searching or seizing "persons, houses, papers, and effects." U.S. CONST. amend. IV. This constitutional protection also applies to hotel rooms. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). Officers Rogers and Haycraft entered Allen's motel room before having secured a warrant. Allen insists the police officers' warrantless search was unconstitutional and the evidence discovered pursuant to the search must be suppressed. Allen correctly does not argue that the manager's initial search of his motel room was proscribed by the Fourth Amendment. *See Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *United States v. Coleman*, 628 F.2d 961, 964–65 (6th Cir.1980) ("the Fourth Amendment proscribes only governmental action, and does not apply to ... even an unreasonable [search] effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official").

The government argues that the police officers' warrantless search of Allen's motel room was not illegal because it did not exceed in scope the initial private search conducted by the motel manager. The government cites *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), for the proposition that, so long as the police officers' search did not exceed the scope of the manager's private search, the police officers' search was constitutionally permissible.

In *Jacobsen*, Federal Express employees opened a cardboard box that had been inadvertently damaged. The employees discov-

ered plastic bags containing white powder. Believing the powder might be cocaine, the employees contacted a federal law enforcement officer. Without first obtaining a warrant, the officer removed the plastic bags from the cardboard box and tested the powder, which proved to be cocaine. In upholding the constitutionality of the officer's actions, the Supreme Court noted that "the container could no longer support any expectation of privacy, and ... it was virtually certain that it contained nothing but contraband." *Id.* at 120 n. 17, 104 S.Ct. at 1660 n. 17. *Cf. Walter v. United States,* 447 U.S. 649, 657, 100 S.Ct. 2395, 2401–02, 65 L.Ed.2d 410 (1980) (plurality opinion) (finding a violation of defendant's Fourth Amendment rights when government's search was a "significant expansion of the search that had been conducted previously by a private party").

■ Unlike the package in *Jacobsen,* however, which "contained nothing but contraband," Allen's motel room was a temporary abode containing personal possessions. Allen had a legitimate and significant privacy interest in the contents of his motel room, and this privacy interest was not breached in its entirety merely because the motel manager viewed some of those contents. *Jacobsen,* which measured the scope of a private search of a mail package, the entire contents of which were obvious, is distinguishable on its facts; this Court is unwilling to extend the holding in *Jacobsen* to cases involving private searches of residences.

■ That the motel manager's search of Allen's room did not extinguish Allen's privacy interest in the room's contents, however, does not mean Allen's privacy interest was not extinguished through other means. Upon learning that Allen was keeping contraband within the motel, the motel manager locked Allen out of his room. With this action, the motel manager divested Allen of his status as an occupant of the room, and concomitantly terminated his privacy interest in its contents. Once the manager, through private action,[1] took possession of the motel room, Allen could no longer assert a legitimate privacy interest in its contents. The manager's consent to the officers' search of the room was all that was required to avoid constitutional infirmity. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (a search conducted pursuant to valid consent is an exception to the Fourth Amendment's warrant and probable cause requirements).

■ Of course, a hotel manager's consent to search a guest's hotel room must be valid and legitimate to avoid the warrant requirement.[2] In this case, the manager's termination of Allen's occupancy rights was eminently proper. Not only was Allen using the room for illegal activities, he had failed to pay the room rent due, even after specific request. Thus, Allen's tenancy properly ceased, both because he was not allowed to store illegal drugs on the premises and because his pre-paid rental period had elapsed. Once "a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession." *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987); *see also United States v. Huffhines,* 967 F.2d 314, 318 (9th Cir.1992) ("[a] guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired"); *United States v. Larson,* 760 F.2d 852, 854 (8th Cir.) (although defendant clearly intended to continue occupying motel room, he lacked a reasonable expectation of privacy in a room because he "stayed in his motel room beyond the occupancy period without paying for the next day's rent"), *cert. denied,* 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *United*

---

1. Although the manager replaced the lockout *at the direction of the police officers* after the officers had conducted their 15–second search of the room, this does not make the manager an agent of the government. The manager merely returned circumstances to the status quo, which was the divestiture of Allen's possessory and privacy interests in the motel room.

2. We do not consider whether the warrant requirement might also be avoided where the hotel manager's consent to search is illegitimate, but the police officers have a good faith basis for believing that the manager's consent to search was valid.

States v. Parizo, 514 F.2d 52, 54 (2d Cir. 1975) ("[W]hen the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room. The manager of a motel then has the right to enter the room and may consent to search of the room and the seizure of the items there found"); State v. Ahumada, 125 Ariz. 316, 609 P.2d 586, 588 (Ct.App.1980) (defendant lost privacy interest in his motel room's contents when he failed to either check out or to pay for another day in advance, as required by motel policy).[3]

■ In sum, we hold that the police officers' warrantless search of Allen's motel room was not unconstitutional, because after Allen's privacy interest in the room was extinguished, the search was undertaken with the motel manager's consent. Thus, the district court's denial of Allen's motion to suppress was not error.[4]

### B. Chain of Custody.

Allen objects to the following links in the government's chain of custody of the illegal drugs seized from Allen's motel room, car, and briefcase: (1) for at least brief periods of time while loading the cruiser with the evidence, Officer Rigdon, who did not testify, was alone with the marijuana; (2) Officer Rogers did not know who possessed the second key to the city hall evidence room, where the marijuana was kept for one night; (3) persons who did not testify had keys to the crime laboratory evidence locker, where the marijuana was kept during testing; and (4) the person in the crime laboratory who returned the marijuana to the police officers, after testing was complete, was not identified.

■ Physical evidence is admissible when the possibilities of misidentification or alteration are "eliminated, not absolutely, but as a matter of reasonable probability." United States v. McFadden, 458 F.2d 440, 441 (6th Cir.1972) (quoting Gass v. United States, 416 F.2d 767, 770 (D.C.Cir.1969) (footnote omitted)), cert. denied, 410 U.S. 911, 93 S.Ct. 973, 35 L.Ed.2d 274 (1973). Merely raising the possibility of tampering is insufficient to render evidence inadmissible. United States v. Kelly, 14 F.3d 1169, 1175 (7th Cir.1994). Where there is no evidence indicating that tampering with the exhibits occurred, courts presume public officers have discharged their duties properly. United States v. Aviles, 623 F.2d 1192, 1197–98 (7th Cir.1980). Absent a clear abuse of discretion, "challenges to the chain of custody go to the weight of the evidence, not its admissibility." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991).

■ Allen merely raises the possibility that someone tampered with the evidence; he points to no evidence showing that alteration actually occurred. Because the government demonstrated at trial there was no reasonable probability that the marijuana taken from Allen's motel room was altered, the district court properly overruled Allen's objection going to the chain of custody.

### C. Sentence Enhancement.

The "Schoolyard Statute," 21 U.S.C. § 860(a), provides that if a defendant violates 21 U.S.C. § 841(a)(1) while "within one thousand feet of, the real property comprising a public or private elementary ... school," then the defendant is subject to up to twice the normal sentence. Because Allen's motel room was less than a thousand feet from a

---

3. As additional grounds for upholding the legality of the search of Allen's motel room, the government cites United States v. Korman, 614 F.2d 541, 547 (6th Cir.), cert. denied, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980) and United States v. Pelham, 801 F.2d 875, 876 (6th Cir.1986), cert. denied, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). The government contends these cases stand for the proposition that when an affidavit contains both legally and illegally obtained evidence supporting issuance of a search warrant, a court should determine whether the untainted portions alone sufficiently

sustain a finding of probable cause. Because the Court finds the initial warrantless search was not illegal, however, the Court does not undertake this analysis.

4. Although we disagree with the district court's application of Jacobsen to the facts of this case, we may affirm on any grounds supported by the record, even though different from the grounds relied on by the district court. City Mgt. Corp. v. U.S. Chem. Co., 43 F.3d 244, 251 (6th Cir.1994).

nearby elementary school, the district court enhanced Allen's sentence by two levels, as provided under United States Sentencing Guideline § 2D1.2(a)(1).

In *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court invalidated 18 U.S.C. § 922(q) as beyond Congress's power under the Commerce Clause. Allen relies on *Lopez* to argue that 21 U.S.C. § 860(a), pursuant to which the district court enhanced his sentence, was also beyond Congress's power. As have the Fifth and Ninth Circuits, however, we find that the Schoolyard Statute is distinguishable from 18 U.S.C. § 922(q).

In *Lopez,* the Supreme Court found that "[s]ection 922(q) is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise." *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1630–31. The Supreme Court further noted that "[n]either the statute nor its legislative history contain[s] express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." *Id.* at ——, 115 S.Ct. at 1631. These characteristics of 18 U.S.C. § 922(q) are in direct contrast to those of the Schoolyard Statute.

■ In *United States v. McDougherty,* 920 F.2d 569 (9th Cir.1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991), the Ninth Circuit rejected the argument that Congress exceeded its plenary authority under the Commerce Clause in enacting 21 U.S.C. § 845a, the prior codification of 21 U.S.C. § 860. The *McDougherty* court stated that "Congress has already determined, and the courts have accepted as rational, that drug trafficking affects interstate commerce.... It would be highly illogical to believe that such trafficking somehow ceases to affect commerce when carried out within 1000 feet of a school." *Id.* at 572 (internal citations omitted); *see also United States v. Thornton,* 901 F.2d 738, 741 (9th Cir.1990) ("[t]he fact that [by enacting the Schoolyard Statute] Congress also sought to protect children from the sale of drugs will not render unconstitutional its otherwise constitutional efforts to regulate drug trafficking"). Similarly, the Fifth Circuit, in *United States v. Clark,* 67 F.3d 1154 (5th Cir.1995),

*cert. denied,* —— U.S. ——, 116 S.Ct. 1432, 134 L.Ed.2d 554 (1996) *and cert. granted,* —— U.S. ——, 117 S.Ct. 40, 136 L.Ed.2d 3 (1996) (remanding for further consideration in light of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)), held that 21 U.S.C. § 860 "is within Congress'[s] commerce power." *Id.* at 1166.

We agree with and adopt the position of the Fifth and Ninth Circuits. Accordingly, we conclude the Supreme Court's reasoning in *Lopez* does not apply to render 21 U.S.C. § 860 unconstitutional. Thus, we reject Allen's argument that his sentence enhancement was improper.

### D. *Cumulative Error.*

Finally, Allen claims that certain errors committed by the district court cumulatively deprived him of his right to a fundamentally fair trial. This contention is meritless for the simple reason that the district court did not commit the errors alleged. Accordingly, we reject Allen's claim of cumulative error.

### III.

■ After briefing was complete, counsel for Allen submitted two supplemental citations: *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and *United States v. Moore,* 76 F.3d 111. (6th Cir.1996). These cases were decided after Allen was convicted and sentenced, but before Allen's conviction became "final." *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987) (conviction not "final" until "availability of appeal [is] exhausted"). Thus, we must apply the rules enunciated in *Bailey* and *Moore* retroactively to this case. *Id.* at 328, 107 S.Ct. at 716.

In *Bailey,* the Supreme Court interpreted the term "use" contained in 18 U.S.C. § 924(c). As we noted in *Moore,* "*Bailey* endorsed a narrower definition of 'use' of a firearm than this circuit had previously applied." *Moore,* 76 F.3d at 112. *Moore* goes on to state that "[u]nless we find that the jury necessarily based its verdict on conduct that, after *Bailey,* is still considered criminal, we must vacate the conviction." *Id.* With

these citations, Allen apparently asks us to vacate his conviction under 18 U.S.C. § 924(c).

Section 924(c)(1) states that

> [w]hoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, *uses or carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

(emphasis added). The *Bailey* Court held that "use" means "active employment," such as "brandishing, displaying, bartering, striking with, ... firing or attempting to fire, a firearm." *Bailey*, —— U.S. at ——, 116 S.Ct. at 508.

On the record below, a jury would not necessarily have to conclude that Allen "used" a firearm. Just as Allen reached for the pistol in his briefcase, he was apprehended by Officer Rogers. Although Allen certainly intended to "use" his pistol, and may have been only a fraction of a second away from grabbing it, the record is insufficient for us to conclude the jury determined he definitely did use it.

There is no question, however, that Allen *carried* a firearm—he physically transported the pistol in his brief case (along with some marijuana), and the pistol was immediately available to him. *See Moore*, 76 F.3d at 113 (noting that physical transportation and immediate availability of a firearm are the determinants of "carrying"). The evidence showing Allen carried a firearm is clear and completely unrebutted. The jury could have reasonably reached only one conclusion—that Allen "carried" a firearm.

Because there can exist no reasonable doubt that Allen carried a firearm during and in relation to a drug trafficking crime, the jury that convicted Allen of a violation of 18 U.S.C. § 924(c) necessarily based its verdict on conduct that, after *Bailey*, is still considered criminal. Accordingly, we decline to vacate Allen's section § 924(c) conviction.

Therefore, Allen's conviction on all three counts as well as the length of his sentence are AFFIRMED.