**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Gerald BASS, Defendant–Appellee.**

No. 01–1017.

United States Court of Appeals,
Sixth Circuit.

June 24, 2002.

Before BATCHELDER and CLAY, Circuit Judges; ALDRICH, District Judge.*

OPINION

ALDRICH, J.

This is an interlocutory appeal from the district court's suppression of evidence in a federal criminal case. This case arose out the indictment of Gerald Bass for conspiracy and fraud in connection with credit card fraud and identity theft.

Bass sought to suppress documents discovered in his duffel bag, which the police seized during a warrantless search of his hotel room. Following a November 7, 2000 evidentiary hearing, the district court granted Bass's motion to suppress the evi-

dence obtained. For the following reasons, we affirm.

## BACKGROUND

On the evening of December 3, 1998, Gerald Bass and at least one other man, Deandre Williams, checked into a Chicago hotel using a counterfeit Michigan driver's license with the name "Robert Brusco." When parking Bass's truck at the hotel, the valet observed a firearm and what he believed to be drugs on the floor of the truck. When the valet informed his manager of this, the hotel manager directed the valet to order Bass to remove any drugs and weapons from the property. Later that evening, when Bass and Williams had left the hotel, the night security guard contacted the Chicago police department. Four Chicago police officers then came to the hotel and set up surveillance.

At approximately 2:45 AM the following morning, Bass and Williams returned to the hotel, but they were stopped by police before they exited their vehicle. Bass was subsequently arrested for carrying a concealed weapon, and Williams was arrested for creating a disturbance.[1]

The hotel manager then asked the police officers to make sure that the hotel room was safe and secure. The police clearly lacked search warrant, and they admittedly had no probable cause to search the room.[2] Despite this lack of formal legal authority, the police complied with the manager's request and searched Bass's hotel room.

Upon entering the hotel room, the police found nothing—no individuals, no weapons, no drugs. But they did find a duffel bag full of papers. The police promptly im-

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Neither individual was given *Miranda* warnings at the time of their arrest.

2. As discussed *infra*, there was a great deal of conflicting testimony from the four police officers present at the scene as to whether Bass consented to the search of his room.

pounded the duffel bag, leading to an indictment for fraud (founded upon the papers discovered in the duffel bag) and the motion to suppress now before this Court.

## DISCUSSION

The Court reviews *de novo* the "district court's determination as to whether certain facts establish a seizure in violation of the Fourth Amendment;" *United States v. Buchanon,* 72 F.3d 1217, 1223 (6th Cir.1995), the district court's conclusion as to the whether there existed "exigent circumstances" justifying a warrantless search; *United States v. Haddix,* 239 F.3d 766, 767 (6th Cir.2001), and the district court's decision concerning the "inevitable discovery" of evidence otherwise excluded under the exclusionary rule. *Id.* The Court shall uphold the district court's factual findings unless they are "clearly erroneous."[3] *United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993).

## I. Bass Had a Reasonable Expectation of Privacy in His Hotel Room

■ Bass had a privacy interest in his hotel room that protected him against a warrantless search and seizure. *Johnson v. United States,* 333 U.S. 10, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *U.S. v. Killebrew,* 560 F.2d 729, 733 (6th Cir.1977) (applying the Fourth Amendment's warrant requirement to searches of hotel rooms).

There is no credible evidence that Bass waived his Fourth Amendment rights by consenting, explicitly or implicitly, to the search of his hotel room.[4]

■ The hotel management had no authority to subvert Bass's exclusive right to consent to the search of his hotel room in the absence of any evidence that the hotel management had decided to evict him at the time of the search. *United States v. Nelson,* 459 F.2d 884, 886–87 (6th Cir. 1972) ("It is clear, of course, that the motel manager's consent to and participation in the two warrantless police searches did not serve to waive appellants' constitutional rights in relation to their rented rooms." (citing *Stoner v. State of California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951)). In fact, the hotel staff had no authority even to enter Bass's room, except for housekeeping purposes, unless (1) Bass himself consented or (2) his tenancy was terminated. *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987) (noting that when "a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room"); *United States v. Rambo,* 789 F.2d 1289, 1295–96 (8th Cir.1986). In this case, Bass's tenancy had not been terminated by eviction at the time the police searched his hotel room.[5] Although

---

3. However, the reasonableness of the officers' conduct is subject to this Court's *de novo* review. *United States v. Kennedy,* 61 F.3d 494, 497 (6th Cir.1995).

4. The trial court, after listening to the testimony of the various witnesses at the evidentiary hearing, found that "Bass was not silent" and that "Bass did not implicitly consent to the search." In weighing the testimony of the police officer who submitted the incident report, the trial court noted that "[t]here is no evidence corroborating [Sgt.] Jenkins's testimony that Bass disavowed any interest in the room. This is particularly troubling consider-

ing that Jenkins testified that seven people went to Bass's room." Mem. Op. at 4. After reviewing the evidence presented at the evidentiary hearing, this Court cannot possibly say that the trial court's decision was clearly erroneous.

5. The government argues that Bass, by engaging in conduct "inconsistent with remaining as a guest," was effectively evicted, and thus lacked a reasonable expectation of privacy in his hotel room. However, the government provides no legal or factual support for this argument, and the Court cannot find any in the record.

the hotel manager testified that he personally considered Bass evicted once he had been arrested,[6] the manager's personal beliefs have no legal import. *See Stoner,* 376 U.S. at 490 (recognizing that the "constitutional protection against unreasonable searches and seizures . . . would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel"). The manager informed no one at the time that Bass had been evicted, and hotel records show that Bass was not formally evicted by the hotel until 7:08 AM on December 4, 1998, more than four hours after the police searched his room.

It was not objectively reasonable, under the circumstances, for the police officers to rely on the hotel manager's consent in searching a tenant's room. *See Illinois v. Rodriguez,* 497 U.S. 177, 185–86, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (requiring that police officers need not apply their judgment correctly, so long as they apply it reasonably). The government presented no evidence that the police officers believed Bass to have been evicted. The hotel manager had not told the police that he had evicted Bass. Without knowledge, actual or implied, that Bass had been evicted from the hotel, the police officers could not reasonably rely on the hotel manager's consent in entering Bass's hotel room. *Stoner,* 376 U.S. at 488 (finding that police officers could not reasonably believe that a hotel night clerk had the authority to consent to a search).

The government wishes to analogize the present situation to that decided by this Circuit in *United States v. Allen,* 106 F.3d 695 (6th Cir.1997), *cert. denied,* 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223

(1997). However, the circumstances present in *Allen* are far distinguished from the present case. In *Allen,* the defendant had failed to pay money owed to the hotel, the hotel had evicted the defendant from his motel room (and blocked his entry to the room with a deadbolt[7])—after the defendant failed to pay his bills and the hotel staff witnessed contraband *inside the motel room*—and the police had obtained a warrant to seize the contraband inside the room. Here, Bass had paid in advance for two nights in his room, and at no time was he evicted from that room prior to the police search. No one viewed contraband or criminal conduct inside Bass's hotel room. No warrant was ever sought or issued to search Bass's room.

## II. No Exigent Circumstances Justified the Warrantless Search of Bass's Hotel Room

■ Where a warrantless search has infringed an individual's Fourth Amendment rights, the Court must then examine the warrantless search to see if exigent circumstance and probable cause warranted the search. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995); *United States v. Morgan,* 743 F.2d 1158, 1161 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) ("Absent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search."). In determining whether exigent circumstances existed, the Court looks to "(1) whether immediate government action

---

**6.** The Court notes that the hotel-guest contract did not authorize the hotel to evict a tenant upon his or her arrest.

**7.** The *Allen* court noted that, by the hotel manager deadbolting the motel room door, "the motel manager divested Allen of his sta-

tus as an occupant of the room, and concomitantly terminated his privacy interest in its contents." *Allen,* 106 F.3d at 699–700. This clear, unmistakable indication of the hotel's eviction of its tenant is absent in the present case.

was required [and] (2) whether the governmental interest was sufficiently compelling to justify a warrantless intrusion ...." *United States v. Rohrig*, 98 F.3d 1506, 1521 (6th Cir.1996). After reviewing the record, the Court finds that no such circumstances existed.

The police officers admit that they had no probable cause to enter the room. Despite this, the government argues that an immediate search of Bass's hotel room, and its pursuant violation of the search warrant requirement, was necessary to ensure the safety of hotel guests.[8] This argument flies in the face the police officers' actions at the time of Bass's arrest. Although the officers allege that their goal was to keep the other hotel guests from harm, it is unclear from what harm (immediate or otherwise) the officers wanted to protect the hotel guests. There was no evidence that there would be any persons or other dangers in Bass's hotel room. *See United States v. Meixner*, 128 F.Supp.2d 1070, 1075 (E.D.Mich.2001) ("[T]he compelling governmental interest must have its foundation in the needs of the moment—the exigency—and the harm which is reasonably presented by the objective information available to the responding officer. The officer must be able to point to specific and articulable facts justifying a reasonable belief that someone inside was in immediate need of assistance."). Further, despite their supposed concern for the safety of hotel guests, the

officers made no attempt to enter Bass's room in the two hours during which they surveyed the hotel prior to Bass's arrest.[9] In fact, the officers did not enter the room or station any personnel outside the room in the forty-five minutes between Bass's arrest and the search of his room. *See Jeffers*, 342 U.S. at 52 (noting a lack of exigent circumstances where "the officers admit they could have easily prevented any such destruction or removal [of property] by merely guarding the door"); *Nelson*, 459 F.2d at 887. From the totality of the circumstances, the Court can find nothing that would have led the police officers to any reasonable belief that the other hotel guests were in any imminent danger at the time they searched Bass's hotel room. *See Rohrig*, 98 F.3d at 1511.

### III. The Inevitable Discovery Exception Does Not Apply

Even though the police officers unconstitutionally seized evidence without a warrant, the exclusionary rule would not apply here if the government could prove by a preponderance of the evidence that this evidence would inevitably have been discovered absent the police officers' violation of the Fourth Amendment. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Leake*, 95 F.3d at 412. For the government to make this showing, it must "demonstrate either the existence of an independent untainted investigation that inevitably would have

---

**8.** At trial, the government also argued that the police officers had searched Bass's room to secure Bass's personal property under the ostensible grounds of safeguarding it from accusations of police thievery. In fact, however, although there were other items in the hotel room, the police officers impounded only the duffel bag, not because of any danger it presented, but "because it was the only item of [Bass's] that appeared to have any value at

all." Gov. Brief at 31. The government has wisely abandoned this argument on appeal, recognizing that such an argument falls well outside the grounds of legal exigency to excuse a warrantless police search.

**9.** The Court again notes that the police officers made no attempt to seek a search warrant for Bass's hotel room during this time.

uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy,* 61 F.3d 494, 499 (6th Cir.1995), *cert. denied,* 517 U.S. 1119, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996); *United States v. Dice,* 200 F.3d 978, 986–87 (6th Cir.2000). The government has failed to meet this burden.

The government argues that, absent the illegal search, the hotel manager, knowing that Bass had been arrested, would have contacted the police department to return Bass's possessions to him. The trial court did not accept this story and neither do we. In speculating on the inevitability of legal discovery of the evidence, this Court's speculation is constrained by the "demonstrated historical facts capable of ready verification or impeachment." *Nix,* 467 U.S. at 444–45 n. 5. The facts in the present case do not show how the duffel bag would have landed in police custody without the illegal police search of Bass's hotel room. The hotel policy regarding abandoned items belies the government's theory of inevitable discovery. Pursuant to this policy, the hotel, if unable to contact Bass at his contact address,[10] would have held the duffel bag for ninety (90) days, after which it would have been discarded. But for the warrantless search of Bass's room,[11] the bag would have been either claimed (presumably by Williams when he was released on bond that same day) or discarded after ninety days. Under no circumstances pursuant to formal hotel policy would the bag have been impounded by the police had the unlawful search not occurred.[12] Therefore, the Court cannot find that the government has met its burden in establishing that the unconstitutionally seized duffel bag "would have been discovered by lawful means." *Id.* at 444.

## CONCLUSION

The Court finds that the duffel bag impounded from Bass's hotel room was the fruit of an illegal search that would not have been inevitably discovered. As such, any evidence obtained from the duffel bag may not be introduced at Bass's trial pursuant to the exclusionary rule. *Murray v. United States,* 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

10. Because Bass left a false contact address, the Court finds it exceedingly unlikely that the hotel's efforts to contact Bass at this address would have panned out.

11. The Court notes that the police officers, had they not searched Bass's room without a warrant, would not have later obtained a warrant and returned to search the hotel room. The government's only investigation was into Bass's activity (carrying a concealed weapon), and, in prosecuting that activity, the government would have had no need to acquire evidence from Bass's hotel room.

12. The hotel manager stated that if no search of Bass's room had occurred, the hotel, knowing of Bass's arrest, would have contacted the police. Despite this informal channel through which the hotel might have delivered the duffel bag to the police station, such delivery would have occurred only at Bass's request and would not have led to the bag being "lawfully impounded."