[Cite as *State v. Nickelson*, 2017-Ohio-7503.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 BE 0039 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SHAROD DESHAWN NICKELSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                             Common Pleas of Belmont County, Ohio
                             Case No. 15 CR 237

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       No Brief Filed


For Defendant-Appellant:      Atty. Dennis W. McNamara
                             88 East Broad Street - Suite 1350
                             Columbus, Ohio 43215

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                             Dated:  August 30, 2017

ROBB, P.J.

{¶1} Defendant-Appellant Sharod Deshawn Nickelson appeals the decision of the Belmont County Common Pleas Court overruling his suppression motion. Appellant contends the warrantless entry into his hotel room in order to evict him was unlawful. He also argues the independent source rule did not justify the subsequent search warrant, claiming the warrantless search prompted the search warrant. If both of these arguments are accepted, then he concludes the fruit of the poisonous tree doctrine requires the suppression of evidence discovered upon execution of the second search warrant, which was obtained based on evidence found during the first search. We conclude the warrantless entry was valid and the independent source rule validated the subsequent search conducted via a warrant in any event. For the following reasons, the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2} Appellant rented a room at Comfort Inn in St. Clairsville. On October 14, 2015, hotel staff made various calls to law enforcement to report unusual activity; numerous cars coming in and out of the parking lot since Appellant's occupancy. They observed suspected drug trafficking from Appellant's room to cars in the parking lot of the hotel. (Tr. 51-52, 54; 2d Tr. 30, 36, 47, 52). For instance, Detective Starkey of the Martins Ferry Police Department received a call from the manager of the hotel in the afternoon. He advised her to record license plate numbers, watch the situation, and report whether the increased traffic in the parking lot continued. (Tr. 50-52). A few hours later, a hotel employee called the detective to report the traffic had increased while she watched the situation from surveillance video. (Tr. 53-54). The detective was unable to immediately take action, but he consulted with the assistant prosecutor and began preparing an affidavit for a search warrant. (Tr. 55, 70-71; 2d Tr. 54).

{¶3} The hotel staff did not ask Appellant to leave but eventually called 911. (Tr. 13, 58; 2d Tr. 34-35). They wanted the police to escort Appellant off the premises. (Tr. 48-49). Deputy Carpenter and Deputy Schwarck from the Belmont County Sheriff's Department responded to the call in separate vehicles. At the hotel,

two hotel employees explained to the deputies what they observed, including two people repeatedly walking from Appellant's room to different vehicles that pulled into the parking lot. (Tr. 14, 94). The employees showed the deputies notes they had taken and video footage. (Tr. 14, 102).

{¶4} The hotel staff informed the deputies they wanted Appellant evicted and removed from the premises. (Tr. 16, 95, 102). Due to the suspected drug trafficking, the employees were fearful of approaching Appellant. (Tr. 16). The deputies asked for an employee to accompany them to the room, but both employees adamantly refused to do so and referred to a recent robbery at a nearby hotel. (Tr. 16-17, 89). The hotel employees gave the deputies a keycard to open Appellant's hotel room. (Tr. 17, 102).

{¶5} The deputies proceeded to Appellant's third floor room. Deputy Carpenter knocked multiple times, announcing he was with the sheriff's department and was there for the hotel staff. (Tr. 18-19). Deputy Schwarck testified they made it clear they were present to remove Appellant from the room at the request of hotel management. (Tr. 106). Deputy Carpenter noted his recent responses to overdose cases and his concern this could be such a case due to Appellant's failure to respond to the knocking. (Tr. 19).

{¶6} Deputy Carpenter used the room key and attempted to push the door open. The interior latch stopped the door from opening more than a few inches. (Tr. 20). Appellant voiced a sound, and the deputy asked him to open the door as they needed to talk to him. (Tr. 20). Appellant asked them to wait; the deputy said "okay" and reiterated why he was there. (Tr. 20). Appellant then noted he would not be able to release the interior latch with the door pressing on the latch. After the door was closed for a period, Deputy Carpenter knocked again.

{¶7} When there was no response, Deputy Carpenter pushed open the door but the interior latch was still in place. Appellant had moved to a place in the room where he could be seen through the crack. Deputy Carpenter observed Appellant holding a bag of pills which was illuminated by the light of Appellant's phone. (Tr. 21). The bag was actually the (tied-off) corner portion of a larger plastic bag (to form

a "V" shape), which is commonly utilized to store narcotics. (Tr. 103-104). The deputy ordered Appellant to open the door, and Appellant asked him to "wait a minute" but did not then comply. Deputy Carpenter forced open the door with his shoulder. (Tr. 22-23). Appellant was still holding the bag of pills, which turned out to be a schedule II controlled substance containing oxycodone. (Tr. 22, 43). Appellant was arrested at approximately 9:10 p.m.

{¶8} When Detective Starkey was advised of Appellant's arrest, he consulted with the assistant prosecutor who advised him to submit his affidavit for the warrant without adding any new details. (Tr. 70-71). The detective's affidavit used to support the search warrant made reference only to what he was told by the hotel employees when they called him. (Tr. 64; 2d Tr. 63-64). The search warrant for Appellant's room at Comfort Inn was issued by a judge at 11:17 p.m. Among items discovered in Appellant's room at Comfort Inn were: two keycards for the room at Comfort Inn; two keycards for a room at another hotel; and $9,181. (Tr. 65). Due to the presence of room keys for another hotel, the police learned Appellant had simultaneously rented a room at the nearby Days Inn. (Tr. 66). The detective then obtained a search warrant for the room at Days Inn where cocaine was discovered.

{¶9} Appellant was indicted on two counts drug trafficking. Count one involved the cocaine (more than 100 grams) found in Appellant's hotel room at Days Inn. Count two involved the oxycodone pills (more than five times the bulk amount) Appellant was holding when police entered his hotel room at Comfort Inn. Appellant filed a motion to suppress, and a suppression hearing was conducted.

{¶10} On June 2, 2016, the trial court overruled the suppression motion. In pertinent part, the court ruled the hotel staff asked the officers to evict Appellant as they were too fearful to do so and a hotel guest loses his expectation of privacy upon eviction. In the alternative, the court found the independent source rule would validate the discovery of the evidence in the room at Comfort Inn as the first search warrant was based on evidence the detective-affiant learned from hotel employees prior to and independent of the warrantless entry by deputies.

{¶11} Subsequently, the trial court permitted Appellant to present additional evidence at a second suppression hearing. The original purpose of the hearing was to discuss an issue with video footage from the third floor hallway which was not preserved when the hotel provided video footage to law enforcement. At the hearing, the court permitted Appellant to delve into the prior issues as well. In a June 17, 2016 judgment entry, the court maintained its prior decision overruling the suppression motion. Appellant pled no contest to the charges and was thereafter sentenced.

{¶12} Appellant filed a timely notice of appeal upon the trial court's issuance of the June 24, 2016 sentencing entry. Appellant's brief was filed in December 2016. He raises one assignment of error addressing the suppression decision, which he divides into three parts: (1) whether the warrantless entry was lawful; (2) if not, whether the first search warrant satisfied the independent source rule; and (3) if both of these questions are answered in the negative and the evidence discovered in those searches is suppressed, the evidence discovered during the execution of the second search warrant must be suppressed as well. The state moved for an extension of time to file a brief, and the motion was granted, but the state did not then submit a brief.

ASSIGNMENT OF ERROR: SUPPRESSION

{¶13} Appellant's assignment of error provides:

"The Trial Court Erred When It Overruled Appellant's Motion to Suppress."

{¶14} A trial court's decision to deny a motion to suppress involves a mixed question of law and fact: legal questions are reviewed de novo, but factual issues are rarely disturbed as the trial court is the fact-finder at the suppression hearing and occupies the best position to evaluate witness credibility. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. In other words, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence; upon accepting the facts as true, the appellate court independently determines, without deferring to the trial court's conclusion, whether the facts satisfy

the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶15} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and mandates the specification of probable cause by oath or affirmation. Ohio's Constitution at Section 14 of Article I provides likewise. Evidence obtained in violation of these provisions is subject to the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applicable to the states via the Fourteenth Amendment). This general rule is subject only to certain "specifically established and well delineated exceptions." *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶16} First, Appellant disputes the legality of the initial entry into his hotel room by officers who claimed to be evicting him on behalf of the hotel. He notes he did not check out of the room and did not consent to the entry or search. He points out a hotel has no authority to consent to search an occupied room. A hotel guest's room is subject to Fourth Amendment protections against unreasonable searches and seizures as long as there remains a reasonable expectation of privacy. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). *See also Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), citing *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). "That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel" to provide consent to search the room. *Stoner*, 376 U.S. at 490. "The law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors or repairmen in the performance of their duties." *Jeffers*, 342 U.S. at 51.

{¶17} In a Second District case, officers who were dispatched to a hotel after a report of possible drug activity agreed to accompany the manager while he informed the guests they were being evicted. *State v. Fleming*, 2d Dist. No. 2003CA71, 2004-Ohio-5278, ¶ 2. The officers stayed to the side of the door while the manager knocked and announced the guests were to vacate the room. In that

case, the door was opened by a guest. When the manager told the defendant to vacate the room, the defendant sat down and said he did nothing wrong. The manager stepped into the room followed by the officers who said the guests would be arrested for trespassing if they did not leave. As drugs and paraphernalia were observed in the room, the three room occupants, including the defendant, were arrested. *Id.* at ¶ 3-4. More drugs were found while police packed the room after the eviction. *Id.* at ¶ 4. The Second District concluded the manager's unheeded requests to leave served as an eviction, meaning the defendant lacked permission to be in the hotel room and no longer had a constitutional expectation of privacy. *Id.* at ¶ 12.

{¶18} Appellant acknowledges a hotel employee can consent to law enforcement's entry into a hotel room if the guest has been evicted. *See id. See also State v. Wright*, 8th Dist. No. 99531, 2013-Ohio-4473, ¶ 9 ("A hotel guest may also lose his reasonable expectation of privacy in a hotel room when he is evicted from the room"), citing *United States v. Spicer*, S.D. Ohio No. 7-CR-244 (Apr. 16, 2012). Pursuant to these cases, "termination of a hotel tenant's occupancy rights for unauthorized activity is proper and hotel management can terminate a guest's occupancy rights by taking affirmative steps to repossess the room." *Wright*, 8th Dist. No. 99531 at ¶ 9, quoting *Spicer*, S.D. Ohio No. 7-CR-244.

{¶19} These courts framed the issue as whether the hotel took "any action to divest the hotel guest of his or her privacy interest in the room" and whether the officers knew the hotel evicted the guest. *See id.* Appellant relies on the statement: "Officers, however, cannot reasonably rely on a hotel employee's consent in entering the room without actual or implied knowledge that the guest had been evicted from the hotel room." *Wright*, 8th Dist. No. 99531 at ¶ 9, citing *United States v. Bass*, 41 Fed. Appx. 735 (6th Cir.2002). The Eighth District concluded:

> Without any affirmative act on the part of the hotel staff to divest Wright
> of his status as an occupant of the hotel room, Wright's privacy interest
> in his hotel room protected him against the warrantless search of his
> hotel room by the police officers. Further, without actual or implied

knowledge that hotel staff had evicted Wright from the room; the police could not reasonably rely on the hotel staff's consent in entering Wright's hotel room.

*Wright*, 8th Dist. No. 99531 at ¶ 12 (where the guest was arrested after damaging the common area of the hotel while on drugs). In *Wright*, the trial court suppressed the evidence, and the appellate court affirmed based upon facts showing there were no affirmative acts by the hotel to evict and there was no knowledge by the police of any eviction. *See id.* at ¶ 13.

**{¶20}** In *Bass*, the Sixth Circuit concluded: "Although the hotel manager testified that he personally considered Bass evicted once he had been arrested, the manager's personal beliefs have no legal import." *Bass*, 41 Fed. Appx. at 737-738 (noting the manager informed no one the defendant had been evicted). The court said the prosecution "presented no evidence that the police officers believed Bass to have been evicted. The hotel manager had not told the police that he had evicted Bass. Without knowledge, actual or implied, that Bass had been evicted from the hotel, the police officers could not reasonably rely on the hotel manager's consent in entering Bass's hotel room." *Id.* at 738.[1]

**{¶21}** Appellant contends the hotel failed to take affirmative steps to effectuate his eviction. He states the deputies knew he had not yet been evicted because the hotel staff was requesting the deputies to assume the hotel's role in the desired eviction. Appellant believes cases involving police assisting a hotel employee are distinct from this case where the hotel employee was afraid to participate in the eviction and asked the police officers to evict the guest for the hotel. Appellant does not argue the hotel lacked good reason to evict him and seemingly acknowledges *the hotel* staff could have properly evicted him by taking affirmative

---

[1] The *Bass* court distinguished its prior *Allen* case. In the *Allen* case: the motel manager went to the room after the guest failed to pay for the upcoming night; the manager unlocked the room and looked around after no one answered the door; upon viewing drugs in the bathroom, the manager locked the guest out of his room; and the manager then showed police to view the contents of the room. *See United States v. Allen*, 106 F.3d 695 (6th Cir.1997). The Sixth Circuit found "the motel manager divested Allen of his status as an occupant of the room, and concomitantly terminated his privacy interest in its contents." *Id.* at 699.

actions to repossess the room, including unlocking his door. The hotel staff asked for assistance with the eviction, but the employees refused to accompany the officers to the room and instead provided the room key to assist the officers in the eviction process. In effectuating the eviction, the officers knocked and announced they were there for the hotel staff. However, Appellant would not answer the door or respond.

{¶22} This court concludes the officer's use of the room key to effectuate the eviction on behalf of the hotel was permissible as Appellant would not respond to the knocking and announcing. Upon partially opening the door, a bag of pills was seen in plain view in Appellant's hand (after they received evidence of drug trafficking being conducted out of this room). The interior door latch was then forced open by the police to arrest Appellant. The refusal of the hotel employees to accompany the officers on the eviction does not invalidate the officers' act of opening the door upon Appellant's refusal to acknowledge the knocking and announcement. The affirmative actions of the hotel staff involved: calling police and demanding assistance in evicting a guest; explaining and showing the evidence of drug trafficking to police, which they watched over the course of the day; and providing police with the room key with instructions to remove the guest from the premises. The officers had actual knowledge of the hotel's desire to evict the guest due to repeated drug trafficking. Construing the facts in the light most favorable to the trial court's interpretation, the officer was justified in using the room key under the circumstances existing in this case which involved the officer participating in the eviction on the request of the hotel.

{¶23} We recognize the United States Court of Appeals for the Ninth Circuit has stated whether a hotel guest retains a reasonable expectation of privacy in his hotel room depends on whether the hotel justifiably terminated the guest's control of the room "through private acts of dominion." *United States v. Cunag*, 386 F.3d 888, 895 (9th Cir.2004), quoting *United States v. Bautista*, 362 F.3d 584, 590 (9th Cir.2004). The Ninth Circuit described the affirmative actions required to repossess as "private acts of dominion." The private acts of dominion here were the demands made upon law enforcement to evict the guest and the foisting of the room key on officers while employees adamantly refusing to accompany them out of fear.

Appellant cites no requirement the guest must have knowledge of the eviction prior to a police search. In fact, the eviction in some cases occurs when the hotel enters and locks out the guest when he is absent from the room.

**{¶24}** The Ninth Circuit pointed out: "The manager did not ask the police to evict [the guest] and the police did not suggest doing so." *See United States v. Young*, 573 F.3d 711, 716 (9th Cir.2009), quoting *Bautista*, 362 F.3d at 590. The Court further stated: "Until [the hotel] made that determination and asked the police to evict Bautista, he was still a lawful occupant who retained a legitimate expectation of privacy in the room." *Bautista*, 362 F.3d at 590 (where the hotel merely asked police to investigate). In accordance, the Ninth Circuit has indicated such facts (asking police to evict for the hotel) would constitute "private acts of dominion" as required for the affirmative action involved in the eviction of the guest. *See, e.g., id.*; *Young*, 573 F.3d at 716. In accordance, Appellant's first argument, dealing with the warrantless entry, is overruled.

**{¶25}** Appellant's second argument is presented in the alternative to his first argument, and Appellant's third argument (on the second search warrant) requires both his first and second arguments to succeed on appeal. Although this court found the warrantless entry was valid to effectuate the requested eviction, the trial court made alternative holdings, and we continue to address the alternative holding.

**{¶26}** Appellant's second argument deals with the trial court's alternative holding wherein the court concluded the independent source rule would validate discovery of the evidence in the room at Comfort Inn as the search warrant executed for the hotel room after the warrantless entry was based upon facts unrelated to the onsite deputies' actions or observations. Appellant argues the independent source rule is unavailable as the evidence discovered in the warrantless entry was the "impetus" for the search warrant.

**{¶27}** The exclusionary rule requires suppression of evidence obtained as a result of an unlawful search and derivative evidence that is the product of the primary evidence or is otherwise acquired as an indirect result of the unlawful search, unless the connection with the unlawful search is so attenuated that the taint is dissipated.

*Murray v. United States*, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The question is whether the taint is sufficiently dissipated or whether the evidence is the fruit of the poisonous tree. *Segura v. United States*, 468 U.S. 796, 804-805, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

{¶28} The exclusionary rule has no application if the government discovered the evidence from an independent source. *Id.* at 805. The independent source rule, which permits courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. *Id. See also State v. Carter*, 69 Ohio St.3d 57, 67, 630 N.E.2d 355 (1994) ("The exclusionary rule does not apply, however, if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint, as where the police have an independent source for discovery of the evidence."). The inevitable discovery doctrine can be a subcategory of the independent source doctrine. *Murray*, 487 U.S. at 538-539.

{¶29} In *Segura*, law enforcement officers arrested a man in the common area of an apartment building but then went upstairs and waited in his apartment for the search warrant, which was in the process of being procured and was awaiting presentation to a magistrate. The Court concluded the evidence found upon execution of the search warrant the next day was the product of an independent source. *Id.* at 813-814. The *Segura* Court rejected the dissent's speculation that the defendant's family could have removed the evidence but for the illegal entry and the conclusion that the illegal entry was the reason the evidence was still there waiting to be found upon execution of the search warrant. *Id.* at 815-816.

{¶30} Subsequently, the Court explained the "classic" independent source situation occurs when information received through an illegal source is considered "cleanly obtained" if it is also obtained via an independent source. *Murray*, 487 U.S. at 538-539. Under the independent source doctrine, the re-seizure of evidence already seized and the re-observation of information already noticed is permissible as the underlying policy is the government should not be placed in a worse position than it would otherwise have occupied. *Id.* at 542. The test is whether the search

pursuant to warrant was in fact a genuinely independent source of the evidence at issue, which requires the state to show: (1) the decision to seek the warrant was not prompted by what was observed during the initial entry; and (2) the information obtained during the initial entry was not presented to support the issuance of the search warrant. *Id.* at 542. *See also Carter*, 69 Ohio St.3d at 68.

**{¶31}** As to the second element, the detective's affidavit in support of the search warrant for Appellant's room at Comfort Inn contained no facts related to the deputies' actions. He utilized only those facts he learned from the hotel employees during the phone calls they placed to him earlier in the day. No fruits of the warrantless entry were submitted in support of the search warrant. Appellant does not contest this element of the test. Appellant contests only the first element, contending it was the deputies' discovery during the warrantless entry (of pills for instance) that prompted the detective to apply for a search warrant for the room.

**{¶32}** As aforementioned, the detective started drafting his affidavit for a search warrant prior to the hotel staff providing the deputies with the room key in order to evict Appellant. As the detective was busy with other tasks, he did not present the application for the search warrant to a judge until two hours after the eviction and warrantless entry. The detective spoke to the assistant prosecutor about the warrant both before and after the deputies' entry. It was within the province of the trial court to believe the detective was pursuing an alternative line of investigation prior to the deputies' entry into the room and to believe his decision to seek a warrant was prompted by the multiple phone calls from the hotel and the explanations provided to him by hotel employees rather than by the deputies' subsequent entry at the hotel's behest.

**{¶33}** Accordingly, Appellant's alternative argument is overruled, and the trial court's alternative holding is upheld. Appellant concedes his third argument regarding the second search warrant would fail if his arguments regarding the warrantless entry and the first search warrant fail. That is, the search warrant for the room at Days Inn (where cocaine was discovered) was based on evidence obtained from the search of the room at Comfort Inn. As the warrantless entry was valid

and/or the search warrant for the room at Comfort Inn was derived from an independent source, the evidence is not the fruit of the poisonous tree and may be utilized in obtaining the second search warrant.

{¶34} For all of the foregoing reasons, the trial court's suppression decision is affirmed.


Waite, J., concurs.

DeGenaro, J., concurs.