DECISION JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. The jury found Danny A. Morrison, defendant below and appellant herein, guilty of: (1) the illegal manufacture of drugs, in violation of R.C. 2525.04; and (2) the possession of criminal tools, in violation of R.C.2923.24.
 {¶ 2} Appellant raises four assignments of error for our review:
First assignment of error:
"Mr. Morrison was deprived a fair trial in violation of theFourth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 10, 14, and 16 of the Ohio Constitution because his trial attorney unreasonably failed to seek suppression of evidence obtained during an illegal search of Mr. Morrison's backyard. (Prelim. Hrg. Tr., Passim. Trial Tr. 91-218)."
Second assignment of error:
"Trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution for failing to object to evidence of a marijuana pipe located in Mr. Morrison's bedroom and having nothing to do with the crimes charged, which permitted the state to improperly tar Mr. Morrison as a person associated with drug use. (Tr. 99, 192)."
Third assignment of error:
"Mr. Morrison's consecutive sentences must be vacated because the trial court did not comply with R.C. 2929.19 in imposing the terms if incarceration and therefore violated the sentencing statute and Mr. Morrison's right to due process of law and guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. (sentencing Tr. 1-5)."
Fourth assignment of error:
"Mr. Morrison was deprived the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his attorney failed to provide an affidavit or any other showing that Mr. Morrison was indigent for the proposes of paying fines and costs and is therefore excluded from such penalties under R.C. 2929.18(B)."
 {¶ 3} On July 25, 2003, Highland County Sheriff's Deputies were searching for Craig Dawson. The authorities were armed with an arrest warrant for Dawson. Officers had observed Dawson with Rick Shinkle, but soon lost visual contact. Soon, officers located Shinkle's vehicle in a wooded area behind the appellant's residence. Officers then proceeded to the appellant's residence to search for Dawson.
 {¶ 4} Detective Daniel Croy received no response when he knocked on the appellant's mobile home door. The officers then walked to the rear of the residence and immediately noticed a strong odor of ether, a methamphetamine reagent, in the air. Officers also heard voices emanating from the wooded area. The officers soon noticed a horseshoe pit and a blue trash barrel. The barrel contained an altered propane tank that appeared to have contained anhydrous ammonia, another methamphetamine reagent. Also, officers observed nearby other items commonly associated with methamphetamine manufacture. The officers then secured the scene and obtained and executed a search warrant.
 {¶ 5} The Highland County Grand Jury returned an indictment charging appellant with: (1) the illegal manufacture of drugs involving methamphetamine; (2) the illegal assembly or possession of chemicals to manufacture drugs; and (3) the possession of criminal tools. After a two day jury trial, the jury returned guilty verdicts on the illegal manufacture of drugs charge and the possession of criminal tools charge. The jury found appellant not guilty of the illegal assembly or possession of chemicals to manufacture drugs.
 {¶ 6} The trial court sentenced appellant (1) to serve four years in prison for the illegal manufacture of drugs; (2) to serve six months in prison for the criminal tools offense; (3) to serve the prison sentences consecutively to one another; and (4) to pay a $7,500 fine. This appeal followed.
 I {¶ 7} Because appellant's first, second and fourth assignments of error involve the alleged ineffective assistance of trial counsel, we will jointly, and out of order, consider those assignments of error.
 {¶ 8} Initially, we note that in order to obtain reversal of a conviction on grounds of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. See Strickland v.Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674,104 S.Ct. 2052; also see State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904; State v. Goff (1998), 82 Ohio St.3d 123, 139,694 N.E.2d 916. A properly licensed attorney is presumed to be competent. State v. Seiber (1990), 66 Ohio St.3d 4, 607 N.E.2d. 438. Generally, counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. With this in mind, we turn our attention to appellant's specific claims.
 A. {¶ 9} In his first assignment of error, appellant asserts that his trial counsel's failure to seek the suppression of evidence obtained during the warrantless search of the area surrounding his residence constitutes the ineffective assistance of counsel. In particular, the appellant contends that (1) the officers' warrantless search and eventual seizure of the evidence intruded into areas within the curtilage of the appellant's home; (2) the officers did not act in "hot pursuit" when they entered the appellant's property and searched the immediate area; and (3) the search warrant obtained subsequent to the warrantless seizure was based upon the unlawfully seized evidence. In opposition to this argument, the appellee contends that "the information used for the search warrant was based on information obtained during a legal entry onto Appellant's property and search of the surrounding area."
 {¶ 10} No per se rule exists that a defendant is entitled to a new trial if trial counsel failed to request evidence suppression. State v. Madrigal (2000), 87 Ohio St.3d 378,721 N.E.2d 52; citing Kimmelman v. Morrision (1986), 477 U.S. 365,106 S.Ct. 2574, 91 L.Ed.2d 305; Defiance v. Cannon (1990),70 Ohio App.3d 821, 592 N.E.2d 884; State v. Kuntz (1992), Ross App. No. 1691. In the case sub judice, both the appellant and the appellee agree that in order to prevail on an ineffective assistance claim under an alleged violation of theFourth Amendment, a defendant must establish that counsel's failure to file a motion to suppress would have a reasonable probability of success and caused him prejudice. State v. Robinson (1996),108 Ohio App.3d 428, 670 N.E.2d 1077; State v. Nields (2001),93 Ohio St.3d 6, 752 N.E.2d 859; State v. Chamblin, Adams App. No. 02CA753, 2004-Ohio-2252. Thus, if the record establishes that a motion to suppress evidence would have been successful, the failure to file the motion constitutes ineffective assistance.Id.
 {¶ 11} Additionally, in Madrigal 87 Ohio St.3d 378,721 N.E.2d 52, the Ohio Supreme Court discussed the issue of the requirement of actual prejudice springing from the failure to file a motion to suppress evidence:
 {¶ 12} "Madrigal assumes that the inquiry for the court is whether the motion to suppress would have been granted had it been filed, as if a probable granting of the motion to suppress meets the prejudice prong. However, assuming arguendo that counsel should have filed the motion, Madrigal cannot meet the prejudice prong of Strickland, that is, there exists "a reasonable probability that absent [Madrigal's attorneys'] errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland at 695, 104 S.Ct. at 2068,80 L.Ed.2d at 698; Kimmelman at 391, 106 S.Ct. at 2591,91 L.Ed.2d at 320-330. Even assuming that Madrigal's suppression motion would have been granted, and the gun would have been excluded, compelling evidence against him still existed."
 {¶ 13} Thus, a defendant must demonstrate that actual prejudice exists in order to establish the ineffective assistance of counsel.
 {¶ 14} There is no doubt that the Fourth Amendment to the United States Constitution, as well as Article I, Section 14, of the Ohio Constitution, guarantees the right of people to be secure in their persons, houses and effects against unreasonable searches and seizures. This means that the State is prohibited from making unreasonable, warrantless intrusions into areas where people have legitimate expectations of privacy. United States v.Chadwick (1977), 433 U.S. 1, 7, 53 L.Ed.2d 538, 97 S.Ct. 2476. It is also well settled law that such protection does not extend to "open fields" outside the home. Oliver v. United States
(1983), 466 U.S. 170, 176-178, 80 L.Ed.2d 214, 104 S.Ct. 1735;Hester v. United States (1924), 265 U.S. 57, 59,68 L.Ed.2d 898, 44 S.Ct. 445. The "open fields" doctrine does not, however, apply to the "curtilage" of the property — or the land immediately surrounding and associated with the home. Oliver,
supra at 180; United States v. Dunn (1986), 480 U.S. 294, 300,94 L.Ed.2d 326, 107 S.Ct. 1134. Factors to consider when determining whether an area is protected curtilage are: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. Dunn, supra at 301.[1]
 {¶ 15} In the case sub judice, after our review of the record we believe that the evidence adduced at trial concerning the barrel's location is simply too scant and imprecise to make a determination whether the barrel was located within the curtilage of the property, and thus protected by the Fourth Amendment, or whether the barrel was located in "open fields," and thus outside appellant's constitutional zone of privacy. We note that Highland County Sheriff's Department Lieutenant Chuck Middleton testified at the preliminary hearing that the barrel was "within ten feet of [appellant's] house." At trial, Sergeant Chris Bowen testified that the barrel was "50 yards from the residence . . ." Deputy Daniel Croy testified that the barrel was "25 or 30 feet from the trailer." Appellant testified that the barrel was ten to twenty feet on the other side of the horseshoe pit, and that the horseshoe pit was "probably" ten feet from the mobile home (thus making the barrel, if we correctly understand this testimony, anywhere from twenty to thirty feet from the residence). However, without sufficient evidence to firmly establish the barrel's location and the nature of the surrounding property, we cannot decide or determine whether the barrel was within the curtilage of appellant's property and whether a reasonable probability exists that the trial court would have granted a suppression motion had one been filed.[2] Thus, while there is some evidence in the trial transcript to indicate that the barrel was located within the protected curtilage of the appellant's residence, that evidence is far from conclusive.
 {¶ 16} Our colleagues in the Fifth District have commented several times on the difficulties of attempting to establish in hindsight that a suppression motion would have been granted on the basis of evidence contained in a trial transcript. See Statev. Culbertson (Nov. 13, 2000), Stark App. No. 2000CA00129 ("when counsel fails to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion."); State v. Parkinson (May 20, 1996), Stark App. No. 1995CA00208 ("Where the record is not clear or lacks sufficient evidence to determine whether a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established.") We believe that these observations are particularly apt here. The record in the case sub judice is simply too undeveloped to hold in the abstract that a reasonable probability exists that a motion to suppress would have been granted.
 {¶ 17} This is not to say that we do not sympathize with the appellant's predicament. Certainly, enough red flags exist in this case to warrant the filing of a motion to suppress. However, without a better developed record we see no way to ascertain whether the appellant was prejudiced and whether on this point counsel failed to meet the minimum requirements of legal counsel as envisioned in the Sixth Amendment to the United States Constitution.
 {¶ 18} The appellant, however, is not without a remedy. Several Ohio courts have held that when claims of ineffective assistance are based on evidence outside the record, the appropriate procedure is to further develop the record through post-conviction proceedings. See State v. Gibson (1980),69 Ohio App.2d 91, 95, 430 N.E.2d 954; State v. Rye, Tuscarawas App. No. 2002AP040028, 2002-Ohio-7046 at ¶ 11; State v.Eastridge, Summit App. No. 21068, 2002-Ohio-6999 at ¶ 20. The Ohio Supreme Court has also noted that it is impossible to determine whether an attorney was ineffective in representation when the allegations of ineffectiveness appear outside the record. For those cases, the Ohio General Assembly has provided the remedy of postconviction relief. See State v. Cooperider
(1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452. Thus, the appellant may further develop this argument through a postconviction relief proceeding.[3]
 {¶ 19} Consequently, until such time that a more conclusive record of the evidence is developed, we cannot find that a reasonable probability exists that a motion to suppress evidence would have been granted. Thus, based upon the state of the record before us, we cannot find that the appellant received constitutionally ineffective assistance of counsel due to his counsel's failure to file a motion to suppress.
 {¶ 20} Accordingly, for these reasons we hereby overrule appellant's first assignment of error.
 B. {¶ 21} In his second assignment of error, the appellant asserts that trial counsel should have objected to the mention of a marijuana pipe and should have requested a curative instruction for the jury. We believe, however, that this amounts to a tactical decision by trial counsel. Although a jury is presumed to follow the trial court's jury instructions, as a practical matter interposing an objection and requesting a curative instruction may unduly emphasize or stress the importance of irrelevant evidence. In the instant case we note that trial counsel did not object during the direct examination, but did make the point during the cross examination that nothing related to methamphetamine was found in the house and that the marijuana pipe was not used for methamphetamine production.
 {¶ 22} Accordingly, based upon the foregoing reasons, we hereby overrule the appellant's second assignment of error.
 C. {¶ 23} In his fourth assignment of error, the appellant asserts that he is indigent and that he should not have been fined $7,500 as part of his sentence. Appellant notes that R.C.2929.18(B) provides that a mandatory fine shall not be imposed upon an indigent offender if the offender alleges in an affidavit filed prior to sentencing that the offender is indigent and is unable to pay the mandatory fine. Appellant asserts that trial counsel's failure to file an affidavit constitutes ineffective assistance of counsel in light of the fact that appellant was indigent for purposes of retaining counsel, that appellant lost his employment due to his arrest and incarceration and that his home was foreclosed on. While the appellant acknowledges that an affidavit of indigency for proposes of obtaining counsel is not determinative of a defendant's ability to pay fines, the affidavit does provide an indicator of appellant's financial condition.
 {¶ 24} As noted in State v. Gipson (1998),80 Ohio St.3d 626, 687 N.E.2d 750, and this courts decision in State v.Gibson, Highland App. No. 03-CR-01, the mere fact that a defendant has appointed counsel is not a sufficient basis for challenging a mandatory fine. In this case, however, the appellant had been incarcerated for forty-nine days, had lost his job, and had his property foreclosed on. These are the type of facts that should have been presented to the sentencing court, and we can find no reason for the failure to do so. Thus, we believe that a reasonable probability exists that the trial court would have found the appellant indigent for purposes of the mandatory fine had trial counsel raised this issue. We note that other Ohio courts have recognized that trial counsel's failure to object to the imposition of a mandatory fine constitutes ineffective assistance of counsel when the record shows a reasonable probability that the trial court would have found the defendant indigent. See, e.g., State v. Powell (1992),78 Ohio App.3d 784, 605 N.E.2d 1337; State v. McDowell Portage App. No. 2001-P-0149, 2003-Ohio-5352; State v. Gilmer Ottawa OT-01-015, 2002-Ohio-2045; State v. Huffman (June 26, 1995), Cuyahoga App. No. 63938.
 {¶ 25} Accordingly, based upon the foregoing reasons we sustain appellant's fourth assignment of error.
 II. {¶ 26} In his third assignment of error, appellant asserts that the trial court failed to comply with R.C. 2929.19 when it imposed consecutive sentences. We reluctantly agree with the appellant.
 {¶ 27} Recently, in State v. Comer 99 Ohio St.3d 463,2003-Ohio-4165, the Ohio Supreme Court wrote in its syllabus:
 {¶ 28} "1. Pursuant to R.C. 2929.14(E)(4) and2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing
 {¶ 29} hearing."
 {¶ 30} 2. Pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing.
 {¶ 31} See, also, State v. Edmonson (1999),86 Ohio St.3d 324, 715 N.E.2d 131, R.C. 2929.14(E), and R.C. 2929.19(B)(2)(c) which delineate the requirements for consecutive sentences.
 {¶ 32} We agree with the appellant that the trial court failed to satisfy all of the requirements for imposing consecutive sentences, undoubtably because (1) Comer recently added new requirements to the sentencing scheme, and (2) the sentencing scheme is unduly complex and convoluted. Accordingly, we hereby sustain appellant's third assignment of error and remand this matter for resentencing.
 {¶ 33} Therefore, based upon the foregoing, we hereby affirm in part and reverse in part the trial court's judgment and remand this matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.
[1] In the case at bar, the appellant asserts that the officers conducted a warrantless search of areas within the appellant's house's curtilage. In State v. York, (1997),122 Ohio App.3d 226,231,701 N.E.2d 463,466, the court discussed the concept of curtilage:
"It has long been held that a person's house is his or her castle and that law enforcement officials may not enter a person's residence to search for evidence of a crime without a search warrant. Weeks v. United States (1914), 232 U.S. 383,389-390, 34 S.Ct. 341, 343, 58 L.Ed. 652, 654-655.Fourth Amendment protections of the home generally extend to the outbuildings located upon the curtilage, such as barns, and it can be fairly said that property owners have legitimate expectations of privacy in them. Oliver v. United States (1984),466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225. * * *
"We have little difficulty viewing this barn, situated only fifty feet from the main house, connected by a driveway, and being put to ordinary household uses, as being part of the Yorks' curtilage under the test set forth in United States v. Dunn (1987), 480 U.S. 294, 301, 107 S.Ct. 1134, 1139-1140,94 L.Ed.2d 326, 334-335. But this does not end the inquiry. "That the area is within the curtilage does not itself bar all police observation." California v. Ciraolo (1986), 476 U.S. 207, 213,106 S.Ct. 1809, 1812, 90 L.Ed.2d 210, 216. Property owners may lose their rights of privacy for activities conducted on the curtilage under certain circumstances, as where he or she does not take steps to shield the activity from view. See, id.; cf. Katz, 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").
In State v. Sheets (1996), 112 Ohio App.3d 1, 7,677 N.E.2d 818, 821, this court also had the opportunity to discuss the law relating to curtilage:
"The Fourth Amendment to the United States Constitution guarantees "the right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Accordingly, the state is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United States v. Chadwick (1977), 433 U.S. 1, 7, 97 S.Ct. 2476,2481, 53 L.Ed.2d 538, 546. However, the "open fields" doctrine, first enunciated by Justice Holmes in Hester v. United States (1924), 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898, 900, provides that one does not have a legitimate expectation of privacy in open fields beyond the curtilage. Oliver v. United States (1984), 466 U.S. 170, 178, 104 S.Ct. 1735, 1741,80 L.Ed.2d 214, 224. Curtilage is the area immediately surrounding a dwelling. United States v. Dunn (1987), 480 U.S. 294, 300,107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334. Factors to consider in pinpointing curtilage are "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301,107 S.Ct. at 1139, 94 L.Ed.2d at 334-335.
[2] We also note that the evidence indicated that the authorities found the "meth lab" in the woods behind appellant's property. Even if the barrel was arguably within appellant's curtilage, we question how this wooded area would be curtilage. We note that the appellant also testified that other people frequented that area for fishing. Indeed, the appellant testified that the area where they found the "stuff" was not even his property.
[3] We note that such proceedings have also been used in other jurisdictions to explore whether trial counsel was constitutionally ineffective for failure to file a motion to suppress evidence. See, generally, Palacio v. South Carolina
(S.C. 1998), 511 S.E.2d 62; Idaho v. Wood (Id. 1998),967 P.2d 702; Nelson v. Alabama (Al.App. 1994), 649 So.2d 1300.