[Cite as *State v. Schellentrager*, 2017-Ohio-9275.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105652**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARTIN J. SCHELLENTRAGER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-607959-A

**BEFORE:** Keough, A.J., E.A. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** December 28, 2017

**ATTORNEY FOR APPELLANT**

Robert C. Aldridge
Law Offices of Richard W. Landoll
9 Corporation Center
Broadview Heights, Ohio 44147


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: John Kirkland
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Defendant-appellant, Martin Schellentrager, appeals his abduction conviction. For the reasons that follow, we affirm.

**{¶2}** In July 2016, Schellentrager was charged with one count of kidnapping, a first-degree felony violation of R.C. 2905.01(B)(1). The matter was tried to the bench. Schellentrager was found not guilty of kidnapping, but was found guilty of the lesser-included offense of abduction, a third-degree felony violation of R.C. 2905.02(A)(1). The court sentenced Schellentrager to five years of community control sanctions. This timely appeal follows.

## I. Facts

**{¶3}** On July 10, 2016, the victim, a ten-year old boy, and his family attended his brother's ice hockey practice at Iceland Arena in Strongsville, Ohio. By the end of the practice, the victim was bored and decided to leave his parents and siblings to check out the game room that was in the general lobby area, but outside of the ice rink. As he approached the doors exiting the East ice rink, a stranger, later identified as Schellentrager, approached him and placed his arm around the victim's shoulder. At this moment, the victim's father noticed the man with his son. Thinking that his son may have struck the man with the door, father was not immediately alarmed, but thought he would start walking toward them to see what occurred. However, when he saw the man whispering in his son's ear and walking toward the main exit, father became increasingly concerned and approached the man. Father told Schellentrager to "get your hands off my

son."  Startled and nervous, Schellentrager complied by putting his hands in the air and exiting the arena.   Two of the arena employees followed him outside and learned that he was staying next door at the Motel 6.

{¶4} The victim testified that Schellentrager put his arm around his shoulder and whispered to him that he could go up to the front desk and put food on Marty's tab, but that the victim had to tell his dad first.   The victim testified that he would have asked his dad, but was unable to because Schellentrager had his arm around him, walking him toward the main exit of the facility.   The victim admitted that Schellentrager did not grab, hurt, or physically threaten him, but stated that he did not want to go to the front door, was scared, and worried by Schellentrager's conduct.

{¶5}  Teresa Silva was standing in the elevated gallery area between the two ice rinks when she noticed an older man walking through the front door of the facility.   She stated she notice him immediately because he was not wearing any shoes and was wearing either short shorts or no pants under his shirt.   According to Silva, the man was walking erratically while looking for something, and walked over to the concession area. Although the concession stand was closed, Schellentrager leaned over the counter.   At that moment, Silva noticed that Schellentrager was only wearing underwear.   When Schellentrager went around the counter, Silva became worried and phoned her husband, who was also at the ice arena.   However, when she looked up, she saw the man come up behind a little boy, wrapping his arms around him, and saying something in his ear.   She described Schellentrager's actions as "a bear hug with both arms."   According to Silva,

Schellentrager was pushing the boy toward the front door. As she started to approach them, she notice other adults near the entrance who stopped Schellentrager and the boy.

{¶6} Police officers Philip Siwik and Bradley Busch responded to a call about a suspicious male attempting to take a child from Iceland Arena. When they located Schellentrager at the Motel 6, he admitted that he went to Iceland Arena to get food for a friend. When the officers questioned him about his interactions with the young boy, he admitted that he "bear hugged" a boy because he was a former teacher and always like kids. According to the officers, Schellentrager admitted that he whispered to the child about putting food on his tab. When questioned why, he responded, "I wanted the kid to come to my room and play with me." According to Officer Siwik, Schellentrager was very forthcoming. However, when they attempted to arrest him, he started yelling, acting erratically by hopping on one foot, and jumping into a shrub. The officers admitted they did not discover anything in his hotel room that caused them alarm.

{¶7} At the close of the state's case, Schellentrager moved for a Crim.R. 29 judgment of acquittal, contending that the state failed to prove the elements of kidnapping, specifically, that Schellentrager "created a substantial risk of serious physical harm." The state acknowledged that proving this element might be an issue, which was the justification for requesting lesser-included offenses to be submitted for deliberation. The trial court took the arguments under advisement and the following day, denied Schellentrager's motion, finding that under the Crim.R. 29 standard, reasonable minds

could reach different conclusions that Schellentrager knowingly under the circumstances created a substantial risk of serious physical harm to the victim.

{¶8} Joseph Schellentrager, a school psychologist, testified on behalf of his brother stating that he was shocked when he found out why his brother was arrested because his brother loved, valued, and cared for children. Joseph testified that since his brother's retirement from teaching and a fall in 2007 that caused him to be in a coma for two weeks, Schellentrager suffered from brain trauma and various mood disorders. He told the court that his brother did not like the effect of the medications, so he stopped taking them. He noticed a change in his brother's behavior, and surmises that this change caused the demise of his brother's marriage.

{¶9} Schellentrager, age 65, testified in his own defense that it was not his intention to hurt the victim and expressed remorse for scaring the victim. He denied telling the officers that he wanted to take the victim back to his hotel room; it was his intention to treat the victim and his friends to snacks at the concession stand. He explained that he went inside the ice arena to get food for a friend because he has a running tab at the ice rink concession stand. He testified that he saw a young kid come out of the East rink and walk toward the snack bar. Thinking that the young boy just finished with practice, he approached the boy and told him to take his teammates to the snack bar and put the items on Marty's tab, but to be sure to tell your dad first. When the young kid questioned what was said, Schellentrager put his arm around the child and walked him away from the busy traffic in the main lobby. He said he knelt down to talk

to the boy, instead he heard a voice from behind him telling him to remove his hands from the boy. He complied and left with two employees, explaining what occurred and where he was staying. Schellentrager testified that he was shocked when the police arrived, but now realizes that the father must have called the police.

## II. Sufficiency of his Conviction

{¶10} Schellentrager was charged with kidnapping in violation of R.C. 2905.01(B)(1). He was found not guilty, however, of kidnapping, but guilty of the lesser-included offense of abduction, a third-degree felony violation of R.C. 2905.02(A). In his first and second assignments of error, Schellentrager challenges the sufficiency of the evidence at various stages at trial. He contends in his second assignment of error that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal on the kidnapping charge made following the state's case. In his first assignment of error, Schellentrager contends that the trial court erred in convicting him of abduction in violation of R.C. 2905.02. The two assignments of error will be discussed together.

{¶11} When an appellate court reviews a Crim.R. 29 motion, the motion should be reviewed in the context of whether the evidence presented supported the offense for which the defendant was convicted. *State v. Carney*, 10th Dist. Franklin No. 00AP-502, 2000 Ohio App. LEXIS 5807, * 4 (Dec. 14, 2000) (the conviction for the lesser-included is the reviewable charge on appeal); *see also In re Moore*, 10th Dist. Franklin No. 04AP-581, 2004-Ohio-6357, ¶ 5. An indictment on a greater offense necessarily and simultaneously charges a defendant with lesser included offenses as well. *State v. Lytle*,

49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990). Accordingly, a dismissal of the kidnapping charge set forth in the indictment would not have mandated a dismissal of the indictment against Schellentrager. *See State v. Turner*, 10th Dist. Franklin No. 97APA05-709, 1997 Ohio App. LEXIS 6021, *6 (Dec. 30, 1997) (finding the lesser-included conviction is the reviewable offense on appeal). Accordingly, the issue on appeal is not whether the evidence was sufficient following the state's case to support a conviction for kidnapping, but whether the trial court should have granted Schellentrager's motion for acquittal with respect to the lesser included offense of abduction.

{¶12} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} Viewing the evidence in the light most favorable to the prosecution, sufficient evidence was presented to support a conviction for abduction. Pursuant to R.C. 2905.02(A), no person, without privilege to do so, shall knowingly (1) by force or threat, remove another from the place where the other person is found; or (2) by force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear. Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The amount of physical exertion may be minimal. *See, e.g., State v. Elam*, 2016-Ohio-5619, 76 N.E.3d 391 (8th Dist.).

{¶14} Testimony was presented that Schellentrager at the very least placed his arm around the victim's shoulder and led him toward the front exit, away from the concession area. Silva testified that she witnessed Schellentrager wrap his arms around the victim, like a bear hug. She testified that she believed that Schellentrager was pushing the victim toward the door.

{¶15} The victim testified that he did not want to go to the front door, but went in that direction because Schellentrager, a stranger, walked him to that area. The victim also testified that Schellentrager never let him go to talk to his dad, despite being told to go tell his dad. Finally, the victim testified that he felt scared and worried by Schellentrager's conduct.

{¶16} Therefore, sufficient evidence was presented to support a conviction for abduction under either subsection R.C. 2905.02(A)(1) or (2). Schellentrager's

unprivileged conduct of placing his arm around the victim and leading him away from the ice rink area to the front door was sufficient to support a conviction of abduction in violation of R.C. 2905.02(A). Accordingly, the trial court properly denied Schellentrager's Crim.R. 29 motion for judgment of acquittal at the close of the state's case. Additionally, for the reasons stated, the trial court did not err in finding Schellentrager guilty of the lesser-included offense of abduction.

**{¶17}** The assignments of error are overruled.

**{¶18}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR