[Cite as *State v. Oliver*, 2018-Ohio-3667.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106305**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTONIO OLIVER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-616013-A

**BEFORE:** Keough, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 13, 2018

[Cite as *State v. Oliver*, 2018-Ohio-3667.]
**ATTORNEY FOR APPELLANT**

Erin E. Hanson
The Rockefeller Building, Suite 1300
614 W. Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Kelly Needham
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Antonio Oliver, appeals his convictions. For the reasons that follow, we find no merit to the appeal.

{¶2} In April 2017, Oliver was named in a six-count indictment charging him with aggravated burglary, abduction, drug possession, resisting arrest, and two counts of assault. The case was tried before a jury, and the following evidence was presented.

{¶3} In the early morning hours of March 25, 2017, Officers Alex Rekhter and Josh Bayer of the Mayfield Heights police department responded to the Staybridge Suites to assist with a drunken male asleep outside his hotel room. The officers helped the male into his hotel room and left the premises. Approximately two and one-half hours later, they received another call that two men were fighting in the Staybridge Suites lobby. The events that precipitated this second call started at the side entrance to the hotel.

{¶4} The jury viewed surveillance video from the Staybridge Suites that showed a woman, identified as Susan Connors ("Susan"), with her two dogs opening the door for a male, later identified as Oliver, who was standing outside a side-entrance to the hotel. The video shows Susan abruptly backing away and retreating as Oliver approached her. According to Susan, Oliver chased her down the hallway and she screamed for her sister-in-law, Sandra McLaughlin-Tablers ("Sandra"), to let her into their hotel room.

{¶5} Sandra testified that she and her husband, James Tabler ("James") (collectively "the Tablers"), were getting ready for breakfast when she heard Susan screaming. Sandra looked outside into the hallway and saw a large man chasing Susan

down the hall. Susan and her dogs were able to get inside the room, but the women could not shut the door because Oliver was forcing his way into their room. According to Sandra, Oliver grabbed hold of Susan and then grabbed her, pushing them both through the kitchen area and toward the bedroom. Sandra stated she tried to prevent Oliver from going near the bedroom where her husband James was because he was in frail health following a liver transplant.[1]

{¶6} However, James exited the bedroom, and he and Oliver started to struggle. According to Sandra, she and Susan were trying to push Oliver out of their hotel room, but also trying to free James from Oliver's grip. She stated that when they reached the main hallway, she began screaming for "help," telling Oliver to "let go," and asking people to "help us; he's on drugs." According to Sandra, no one helped them until they reached the main lobby, where an employee assisted them. Sandra testified that she and James both received bruising to their arms, and her arm was bleeding. She stated that she was "scared to death" for her safety; she thought "they were all going to die" when Oliver forced himself into their hotel room. Susan's testimony was similar to and corroborated Sandra's testimony.

{¶7} Ivan Mitchell, an employee at Staybridge Suites, testified that he intervened and assisted the Tablers because they were calling for help. He stated that he saw Oliver

---

[1]Sandra, James, and Susan were living at the Staybridge Suites since December 2016 because his surgery and recovery required them to stay in the area for five months. All three lived out of state — Sandra and James lived in Louisville, Kentucky, and Susan lived in Jacksonville, Florida.

had a "tight hold" on James's arm and would not let go of him. Ivan testified that he tried to get Oliver off of James for a few minutes before he was able to help break James loose.

{¶8} The jury also viewed surveillance video from the main lobby area that captured Oliver holding onto James's arm and sweatshirt. Sandra and Ivan could be seen pulling at Oliver and hitting his arm, trying to get him to release James. Susan was on her cell phone, calling the police.

{¶9} Officer Robert Lord was the first to respond to the call and found Oliver in the hotel lobby. Oliver refused to comply with commands to place his hands on the wall; instead he turned and took steps toward the officer. According to Officer Lord, Oliver was "likely on drugs" because he was frothing at the mouth, and his eyes were not "normal" — "he looked at me, but past me." After Oliver failed to comply with several warnings, Officer Lord deployed his taser twice. Officers Rekhter and Bayer arrived following the taser deployment and assisted Officer Lord with Oliver, who they discovered was the male they previously encountered that morning.

{¶10} The officers testified that they were able to secure one handcuff on Oliver's wrist, but when the taser cycle ended, Oliver grabbed the other loose handcuff and would not let it go. According to the officers, he became increasingly aggressive and repeatedly refused requests to place his hands behind his back. The officers had to initiate the taser seven times in total to finally secure Oliver. The jury watched video and listened to audio taken from several body cameras of the responding officers.

{¶11} Once secured, Oliver was transported to the hospital for removal of the taser barbs and for other medical attention. Officer Lord rode along in the ambulance and said that during transport, Oliver was not coherent and was unresponsive to medical assistance. Officer Rekhter testified that when he took Oliver into custody after he was released from the hospital, Oliver was in disbelief upon learning what had transpired.

{¶12} Oliver testified in his own defense. He testified that he was staying at the Staybridge Suites to "cool off" from a disagreement between him and his wife. He stated that he was drinking alcohol and called a friend to have a drink with him. When his friend arrived, Oliver went to the friend's car and smoked PCP. He stated that he does not do drugs often, but did so on this occasion. Oliver stated that he did not remember much of what happened after he smoked PCP. He recalled wanting to get back to his hotel room and vaguely remembered the police officers helping him. He did not recall the interaction and altercation with the Tablers and Susan. When Oliver was shown the surveillance video, he admitted that he was the person with Susan in the hallway, and the one holding onto James in the lobby. He stated that his actions were out of character, but admitted he should be held responsible for them.

{¶13} The jury found Oliver not guilty of aggravated burglary, but guilty of the lesser included offense of burglary; not guilty of abduction, but guilty of the lesser included offense of unlawful restraint; and not guilty of both counts of assault, but guilty of drug possession and resisting arrest as charged in the indictment. The trial court imposed a total jail sentence of six months.

**{¶14}** Oliver now appeals, raising four assignments of error.

## I. Confrontation

**{¶15}** Prior to trial, the state filed a motion requesting that the Tablers be permitted to testify via Skype, a live video broadcasting link, because they lived out of state and James was still recovering from his liver transplant and receiving dialysis. The state requested that Sandra also be allowed to testify via Skype because she was caring for James. Oliver objected, contending that allowing the victims to testify remotely violated his right to confrontation, and that the state failed to demonstrate exceptional circumstances existed to allow for video testimony. Following a hearing, the trial court issued a written decision, finding that allowing the alleged victims to testify via video was justified because they lived out of state, and one of the witnesses was on dialysis, making travel difficult. The court also concluded that the other elements of confrontation would be satisfied based on its intention to swear in the witnesses, who would be subject to cross-examination, and the jury and defendant would have the ability to observe the witnesses' demeanor. Ultimately, however, only Sandra testified at trial; James did not.

**{¶16}** Days before trial was scheduled to commence, the state filed another motion requesting that Susan be permitted to testify via live broadcast because she lived out of state and had been in Ohio previously for six months caring for James. The prosecutor also maintained that Susan had a job, suggesting an added difficulty. The court did not conduct a hearing or rule on this motion prior to trial. On the day of trial and immediately prior to Susan testifying, the trial court considered the motion and Oliver's

objection. Oliver argued that a witness's inconvenience is not an exceptional circumstance to justify witness testimony by Skype. Additionally, Oliver stated that the quality of the Skype link used earlier for Sandra's testimony was not of the same quality of someone was testifying in the courtroom — there were times the testimony was unable to be heard and the signal broke up. The court disagreed that the quality was low and found that the state had remedied any interruption in the video feed by asking the witness to repeat her answer. The court allowed Susan to testify by Skype.

{¶17} In his first assignment of error, Oliver contends that the trial court erred by allowing these two witnesses to testify via live video link, thus depriving him of a meaningful chance to confront the witnesses against him.

{¶18} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Issa*, 93 Ohio St.3d 49, 59, 752 N.E.2d 904 (2001), fn. 4. Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

{¶19} However, the United States Supreme Court has held that although "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," that "preference must occasionally give way to considerations of public policy and the

necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

> In holding that the right to confrontation is not absolute, the court detailed a number of important reasons for that right, including (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant.

*State v. Marcinick*, 8th Dist. Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 14, citing *Craig* at 845-846. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig* at 845.

{¶20} In *Marcinick*, this court utilized the two-part analysis from *Craig* to determine whether the admission of testimony via teleconference at trial violated the defendant's right of confrontation. This court held:

> To qualify as an exception, the procedure must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor.

*Marcinick* at ¶ 18, citing *Harrell v. State*, 709 So.2d 1364, 1369 (Fla.App.1998), citing *Craig* at 849-851. Applying the *Craig* analysis, this court found in *Marcinick* that the teleconferencing testimony of the social worker witness who was out of the country, did not violate the defendant's right to confrontation because the state demonstrated that the witness was unavailable, established the admissibility of the testimony, and the two-way video link preserved the reliability elements of confrontation. *Id*. at ¶ 22.

{¶21} Applying the two-part analysis to the facts in this case, we find that the trial court did not err in granting the state's motion to allow Sandra to testify via Skype, but erred in permitting the video-link testimony of Susan. Nevertheless, the trial court's error pertaining to Susan was harmless because her testimony was merely cumulative to Sandra's testimony and the surveillance video shown during trial.

{¶22} Regarding Sandra's testimony, the trial court conducted a hearing prior to trial. The record demonstrates that Sandra lived in Louisville, Kentucky and was caring for James, who was currently undergoing dialysis following a liver transplant. James was unable to travel to Ohio to testify. Therefore, under the fact-specific circumstances, Sandra was unavailable to testify in person. Moreover, the testimony of Sandra was admissible and relevant because she was an eyewitness and a named victim in one of the assault charges. Further, the Skype procedure satisfied the other elements of confrontation. The record demonstrates that Sandra was under oath when she testified, subject to cross-examination, and the jury and Oliver were able to observe her demeanor. Accordingly, the circumstances in this case satisfy the *Craig* elements.

{¶23} Oliver contends, however, that the video-link system often interrupted, negating the reliability elements of confrontation. The trial transcript reveals that on three occasions, the video-link-system "broke up." During those instances, Oliver did not object or note any issues during the testimony. In fact, Oliver did not conduct any cross-examination of Sandra despite these video-link disruptions. Moreover, during these moments of disruption, the prosecutor acknowledged that the video-link broadcast

interrupted, and asked Sandra to repeat her answer or slow down when giving her testimony. Finally, during these interruptions, Sandra was testifying about the physical harm she and James suffered, and that she was fearful. The jury ultimately acquitted Oliver of both counts of assault, where James and Sandra were the victims, and found him guilty of lesser included offenses that did not include elements of harm or fear. Therefore, any interruption in the video-linking system was not prejudicial to Oliver. Accordingly, the trial court did not err in allowing Sandra to testify via Skype.

{¶24} The trial court erred, however, in allowing Susan to testify via Skype because, unlike Sandra, Susan was not unavailable. Although the state filed a pretrial motion for Susan to testify, the trial court did not conduct a hearing or rule on the motion prior to trial. The basis for the request to testify remotely was because Susan lived in Jacksonville, Florida and had previously been in Ohio for six months caring for her brother, James. Prior to Susan testifying, the state also stated that Susan had a job; suggesting that she was unavailable. However, during her testimony, Susan testified that she was not employed and had been in Cleveland previously for only five months. Based on the case-specific circumstances, Susan was not unavailable to testify in person but rather inconvenienced. We find that this reasoning is an insufficient justification. Although the reliability elements of confrontation were satisfied — she was under oath, subject to cross-examination, and observable — the unavailability threshold was not met.

{¶25} Nevertheless, the trial court's error is harmless because allowing Susan to testify via Skype was not prejudicial. Pursuant to Crim.R. 52(A), "any error, defect,

irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983).

{¶26} A review of the record demonstrates that Susan's testimony was cumulative to that of Sandra's. Both Sandra and Susan testified about the circumstances surrounding Oliver's actions in gaining access to their hotel room and the physical altercation that ensued inside the hotel room. Moreover, the jury viewed surveillance video showing the initial interactions between Oliver and Susan. Based on the testimony given by Sandra, the trial court's error in allowing Susan to testify remotely was harmless beyond a reasonable doubt. Sandra's testimony alone overwhelmingly supported Oliver's convictions for burglary and unlawful restraint.

{¶27} Accordingly, Oliver's first assignment of error is overruled.

## II. Effective Assistance of Counsel — Motion to Suppress

{¶28} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation and (2) he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶29} Trial counsel's "failure to file a suppression motion does not constitute per se ineffective assistance of counsel" since "[f]iling a motion to suppress is not without risks." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Madrigal* at 389. Courts must look to the facts of the case to determine whether counsel made a tactical decision not to file such a motion. *Madrigal* at *id*. Further, counsel is not ineffective for failing to file a motion to suppress if there was no reasonable probability of success or there was no prejudice to the defendant. *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

{¶30} In this case, Oliver contends in his second assignment of error, that his counsel was ineffective for not filing a motion to suppress the drugs found during the warrantless search of his hotel room.

{¶31} "'[T]he Fourth Amendment protection against unreasonable searches and seizures is not limited to one's home, but also extends to such places as hotel or motel rooms.'" *United States v. Bautista*, 362 F.3d 584, 589, (9th Cir.2004), quoting *United States v. Cormier*, 220 F.3d 1103, 1108-1109 (9th Cir.2000). A registered hotel guest

has a reasonable expectation of privacy in his room under the Fourth Amendment. *See, e.g., State v. Wright*, 8th Dist. Cuyahoga No. 99531, 2013-Ohio-4473, ¶ 8.

**{¶32}** However, once the hotel guest voluntarily abandons the room, his status is lawfully terminated, or the rental period has expired, the guest no longer has a legitimate expectation of privacy in the hotel room. *Bautista* at 589, citing *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir.1977); *State v. Miller*, 77 Ohio App.3d 305, 602 N.E.2d 296 (8th Dist.1991). Whether a person's status as a guest has been terminated or a person has been evicted, is determined by whether the hotel staff took affirmative steps to repossess the room. *Wright* at ¶ 9; *State v. Nickelson*, 7th Dist. Belmont No. 16 BE 0039, 2017-Ohio-7503. Once the guest is evicted or his status has been lawfully terminated, a hotel employee can consent to law enforcement's entry into a hotel room because the guest no longer has a reasonable expectation of privacy. *Wright* at *id*. However, law enforcement must also have actual or implied knowledge that the guest has been evicted from the hotel room before entering without a warrant. *Wright* at *id*., citing *Miller* at 312-313, and *United States v. Bass*, 41 Fed.Appx.735 (6th Cir.2002).

**{¶33}** Accordingly, a hotel guest who has not voluntarily abandoned his room or exceeded his rental period maintains a reasonable expectation of privacy unless the hotel staff takes affirmative steps to lawfully terminate his status as a guest or evicts him from his room. Additionally, law enforcement wishing to conduct a warrantless search of a hotel guest's room must have actual or implied knowledge that the guest has been evicted from his hotel room.

{¶34} Oliver contends that based on this court's decision in *Wright*, 8th Dist. Cuyahoga No. 99531, 2013-Ohio-4473, there was a reasonable probability of success that the trial court would have suppressed the drugs discovered in his room because the hotel staff had not taken any affirmative steps to evict him, thus making the officers' warrantless search unlawful. He further maintains that he was prejudiced because the only evidence supporting his drug possession conviction was the drugs discovered in his room.

{¶35} In *Wright*, this court upheld the trial court's decision suppressing evidence discovered in Wright's hotel room following a warrantless search. Wright was arrested in the hotel lobby after police were called because he was disrupting other hotel guests and vandalizing property in the common area of the hotel. When the police arrived, they discovered Wright naked, sweating, and foaming at the mouth; Wright admitted that had taken the drug PCP. Following Wright's removal from the hotel, the hotel staff asked police to check Wright's room for damages, and an employee opened the room for the officer. Once inside, an officer discovered drugs in an open dresser drawer. Wright moved to suppress the drugs because the officers conducted a warrantless search.

{¶36} This court held that absent evidence of any affirmative acts by the hotel staff to divest the defendant of his status as an occupant and guest of the hotel, the defendant maintained a reasonable expectation of privacy in his hotel room. *Wright* at ¶ 11-12. Accordingly, the warrantless search was unlawful. *Id*.

{¶37} We find *Wright* procedurally distinguishable. The appeal taken in *Wright* was from the trial court's granting of Wright's suppression motion following a hearing. Therefore, the record was fully developed regarding the search, including testimony explaining the circumstances surrounding the search of the hotel room and whether the search was lawful.

{¶38} Unlike in *Wright*, the appeal in this case follows a jury trial. It is difficult for a defendant to establish in hindsight on the basis of evidence contained in a trial transcript, that a suppression motion would have been granted. *State v. Morrison*, 4th Dist. Highland No. 03CA13, 2004-Ohio-5724. "[T]he record developed at trial is generally inadequate to determine the validity of the suppression motion" because the issues at trial are different than the issues at a suppression hearing. *State v. Culbertson*, 5th Dist. Stark No. 2000CA00129, 2000 Ohio App. LEXIS 5257,*13-14 (Nov. 13, 2000); *State v. Hohvart*, 7th Dist. Mahoning No. 06 MA 43, 2007-Ohio-5349 (insufficient evidence presented at trial to determine whether a motion to suppress would have been successful); *see also State v. Abass*, 5th Dist. Stark No. 2016CA00200, 2017-Ohio-7034; *State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109; *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482.

{¶39} Following the close of the state's case and prior to making a Crim.R. 29 motion for acquittal, Oliver moved to suppress the drugs that were discovered as part of the search of his hotel room. (Tr. 423.) Counsel indicated that she was unaware prior to trial of the circumstances surrounding the search because there was no indication in

Officer Bayer's report regarding how the police gained access to the room. However, after Officer Bayer testified that he entered Oliver's room at the request of the hotel manager to remove any other occupants from the room, counsel then realized that the search may have been unlawful, thus precipitating her mid-trial motion to suppress. After hearing arguments from both sides, including the state's objection that the motion was untimely, the trial court denied the motion to suppress as untimely, but also because "the testimony has been given on the subject." (Tr. 426.) Arguably, trial counsel did in fact move to suppress the evidence and the trial court considered the merits of the motion when it denied the oral motion. If that were true, Oliver's challenge on appeal would be moot.

{¶40} In this case, the record is undeveloped to determine if a suppression motion would have likely been granted. The issue at trial was whether the state presented sufficient evidence to prove that Oliver committed the offenses as indicted; not whether the search of Oliver's hotel room was lawful. Therefore, the state did not need to set forth any testimony or evidence from the hotel manager regarding Oliver's status as a hotel guest to satisfy its burden of proving its case again Oliver. Accordingly, we cannot say that the motion, if filed, would have likely been granted because the state presumably would have elicited testimony from the hotel manager about Oliver's status as a hotel guest to justify the warrantless search.

{¶41} Nevertheless, based on the record before us, we also find that no reasonable probability exists that a motion to suppress would likely have been granted. Officer

Bayer testified that he was asked to check Oliver's hotel room "and if there was anyone else in the room [the hotel manager] wanted them removed." (Tr. 410.) Officer Bayer also testified that he wanted to check the room to see if "there were potentially any more victims." (Tr. at *id.*) According to Officer Bayer, the on-duty manager opened Oliver's room and allowed him inside. It is reasonable to infer that because the hotel manager had asked that "any other occupants be removed," Oliver, after allegedly assaulting other hotel guests, was also evicted and his guest-status was revoked. Officer Bayer testified that in performing a protective sweep of the hotel room, the drugs were in plain view on the bathroom sink. Accordingly, the trial testimony does not support a reasonable possibility that a motion to suppress would have been successful.

{¶42} Finally, even if the court granted the motion, sufficient evidence was presented to support Oliver's drug possession charge. As discussed later in our analysis of the third assignment of error, Oliver admitted to using PCP. This admission alone is sufficient to prove drug possession pursuant to R.C. 2925.11(A); the actual discovery of the drugs in Oliver's hotel room becomes unnecessary.

{¶43} Accordingly, we cannot say that counsel was ineffective for failing to file a motion to suppress. The assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶44} In his third assignment of error, Oliver contends that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal.

{¶45} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-829, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus

{¶46} Oliver first contends that the trial court erred in denying his Crim.R. 29 motion on the aggravated burglary and abduction charges because no evidence was presented to prove that James, the named victim, suffered physical harm. When an appellate court reviews a Crim.R. 29 motion, the motion should be reviewed in the context of whether the evidence supported the offenses for which the defendant was convicted. *State v. Schellentrager*, 8th Dist. Cuyahoga No. 105652, 2017-Ohio-9275, ¶ 11, citing *State v. Carney*, 10th Dist. Franklin No. 00AP-502, 2000 Ohio App. LEXIS 5807, * 4 (Dec. 14, 2000) (the conviction for the lesser-included is the reviewable charge on appeal). Accordingly, we will review the sufficiency of the evidence for Oliver's convictions on the lesser included offenses of burglary and unlawful restraint.

{¶47} Oliver was convicted of burglary, commonly referred to as "trespass in a habitation," in violation of R.C. 2911.12 (B), which provides that "[n]o person by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person * * * is present or likely to be present." Sandra testified that they had been living at the Staybridge Suites since December 2016 while James received and recovered from a liver transplant. She further stated that Oliver chased Susan down the hall, causing her to retreat inside their hotel room. However, they could not get the door closed before Oliver forced himself inside their room. Accordingly, the evidence was sufficient to support his conviction for trespass in a habitation.

{¶48} Pursuant to R.C. 2905.03(A), regarding unlawful restraint, "[n]o person, without privilege to do so, shall knowingly restrain another of the other person's liberty." The named victim for this count was James. Sandra testified that Oliver grabbed James's arm and began pushing him. Oliver continued holding James's arm despite Sandra and Susan's attempts to pry him off James. He continued holding onto James from the hotel room, into the hallway, and then into the common area and lobby of the hotel. Sandra and Susan were only able to break James free from Oliver's grasp after the police were called, and Ivan intervened and assisted. Accordingly, the evidence was sufficient to support Oliver's conviction for unlawful restraint.

{¶49} Oliver was also convicted of drug possession in violation of R.C. 2925.11(A), which prohibits a person from knowingly obtaining, possessing, or using a controlled substance or a controlled substance analog. Oliver admitted that his friend

offered him drugs in the parking lot of the Staybridge Suites, and that although he was not familiar with the drug, he smoked PCP with his friend in the car. Accordingly, Oliver's admission that he was using drugs with his friend is sufficient to support his conviction for drug possession.

{¶50} Additionally, when questioned about the drugs in his hotel room, Oliver stated that he did not recall bringing the drugs into his room but that they were not there when he initially arrived at the hotel and he did not remember anyone else bringing the drugs into his room. Accordingly, there was sufficient evidence that the drugs discovered in his hotel room belonged to him.

{¶51} Pursuant to R.C. 2921.33(A), regarding resisting arrest, "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person." Officers Lord, Rekhter, and Bayer each testified that Oliver repeatedly refused to comply with their commands. The officers attempted to place handcuffs on Oliver, but he resisted by grabbing at the loose end of the handcuff and became increasingly aggressive. The jury was able to observe and hear the interactions between the officers and Oliver from body camera video, including the officers' repeated instructions to "stop resisting." Accordingly, there was sufficient evidence to support Oliver's conviction for resisting arrest.

{¶52} Oliver's third assignment of error is overruled.

## IV.   Manifest Weight of the Evidence

{¶53} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion.  *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12.   A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).   A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction."  *Id.*

{¶54} In this case, the jury's verdict demonstrates that it rendered a decision based on the evidence presented.   The jury was able to view the video surveillance and compare that to the testimony given at trial.   They were able to witness the initial interaction between Oliver and Susan, and then observe Oliver holding onto James in the hotel lobby.   Oliver admitted that he used PCP with his friend.   Additionally, the body camera videos showed the interaction between Oliver and the officers, including the officers' repeated commands to stop resisting.   This case is not the exceptional case in which the evidence weighs heavily against the convictions.   Accordingly, Oliver's final assignment of error is overruled.

{¶55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

———————

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MELODY J. STEWART, P.J., CONCURS IN JUDGMENT ONLY